# Exhibit B

**EXHIBIT B – REQUEST FOR JUDICIAL NOTICE**

**BRIEF *FYK V. FACEBOOK* BACKGROUND – HOW FYK GOT TO THIS POINT**

1. Placing the Section 230 unconstitutionality discussion into some context (private activity versus proxy governmental "agent" function) makes it far easier to understand how Section 230 is unconstitutional as applied and on its face, in particular with respect to as applied. That context (*i.e.*, case study) is a case involving Fyk. It is important that this Court have some context as to the harms Fyk has suffered as a result (at the root) of the legal shortcomings of Section 230. To do that, we briefly explain that which has transpired in *Fyk v. Facebook, Inc.*, No. 4:18-cv-05159-JSW (N.D. Cal.) / *Fyk v. Facebook, Inc.*, No. 19-16232 (9th Cir.).

2. Fyk is the owner-publisher of WTF Magazine. For years, Fyk used social media to create and post humorous content on Facebook's purported "free" social media platform. Fyk's content was extremely popular and, ultimately, Fyk had more than 25,000,000 documented followers at peak on his Facebook pages / businesses. According to some ratings, Fyk's Facebook page (WTF – Where's The Fun - Magazine) was ranked the fifth most popular page on Facebook, ahead of competitors like BuzzFeed, College Humor, Upworthy, and large media companies like CNN. Fyk's large Facebook presence resulted in his pages becoming income generating business ventures, generating hundreds of thousands of dollars a month in advertising and lead generating activities, which such value was derived from Fyk's high-volume fan base distribution.

3. Between 2010 and 2016, Facebook implemented an "optional" paid for reach program. Facebook began selling distribution, which it had previously offered for free and, in doing so, became a direct competitor of users like Fyk. This advertising business model "create[d] a misalignment of interests between [Facebook] and people who use [Facebook's] services," Mark Zuckerberg, *Understanding Facebook's Business Model* (Jan. 24, 2019), which incentivized(s)

Facebook to selectively and tortiously interfere with users' ability to monetize by removing content from non-paying / low-paying users in favor of higher paying "high[er] quality participants in the ecosystem." Mark Zuckerberg Interview / Public Discussion With Mathias Döpfner (Apr. 1, 2019).

4. A high-ranking Facebook executive bluntly told Fyk that Fyk's business was disfavored compared to other businesses that opted into paying Facebook extraordinary sums of advertising money. Although Fyk reluctantly opted into Facebook's commercial program at a relatively low amount of money (in comparison to others, such as Fyk's competitor), Facebook reduced the reach / distribution / availability of Fyk's pages / businesses by over 99% overnight. Then, in October 2016, Facebook fully de-activated several of Fyk's pages / businesses, totaling over 14,000,000 fans cumulatively, under the fraudulent aegis of "content policing" pursuant to Section 230(c)(2)(a). Facebook's content policing, however, was not uniformly applied or enforced as a result of Facebook's insatiable thirst for financial gain.

5. In February and March of 2017, Fyk contacted a prior business colleague (and now competitor) who was favored by Facebook, the competitor's having paid over $22,000,000.00 in advertising. Fyk's competitor had dedicated Facebook representatives (whereas Fyk was not offered the same services) offering additional assistance directly from Facebook. Fyk asked his competitor if they could possibly have their Facebook representative restore Fyk's unpublished and / or deleted pages for Fyk. Facebook's response was to decline Fyk's competitor's request unless Fyk's competitor was to take ownership of the unpublished and / or deleted content / pages. Facing no equitable solution, Fyk fire sold his pages / businesses to the competitor. Facebook thereafter restored (contributing to the development of, at least in part) the exact same content that Facebook had restricted and maintained was purportedly violative of its purported "offensive" content Community Standard rules (*i.e.*, purportedly violative of 230(c)(2)(A)) while owned by

Fyk. Facebook's preferred (*i.e.*, higher paying) customers did not suffer the same consequences as Fyk, simply because they paid more.

6. On August 22, 2018, Fyk sued Facebook in the Northern District of California Court, alleging fraud, unfair competition, extortion, and tortious interference with his economic advantage based on Facebook's anti-competitive animus. Facebook filed a 12(b)(6) motion, based largely (almost entirely) on Section 230(c)(1) immunity. The District Court (Hon. Jeffrey S. White presiding) continued the proceedings, then vacated oral arguments and granted Facebook's motion on the papers, without affording Fyk leave to amend the Verified Complaint. The District Court's dismissal punctuated the many things wrong with Section 230, which such wrongs this constitutional challenge seeks to rectify.

7. Fyk appealed to the Ninth Circuit Court of Appeals. The Ninth Circuit panel affirmed the District Court decision without oral argument in a cursory five-page Memorandum. Fyk filed a Petition for Hearing *En Banc*, which was summarily denied on July 21, 2020. The Ninth Circuit's affirmation of dismissal further punctuated the many things wrong with Section 230, which such wrongs this constitutional challenge seeks to rectify.

8. On November 2, 2020, Fyk filed a Petition for Writ of Certiorari to the Supreme Court of the United States (the "Petition"). Notwithstanding Justice Thomas' October 13, 2020, invitation for the SCOTUS to take up an appropriate case wherein the "correct interpretation of §230," *Enigma*, 141 S.Ct. at 18, could be assessed, the SCOTUS denied Fyk's Petition without comment.

9. With case law having evolved since the time the District Court dismissed Fyk's case against Facebook (along with other bases for reconsideration under Federal Rule of Civil Procedure 60), on March 22, 2021, Fyk filed (back in the Northern District of California Court)

his Motion for Relief Pursuant to Fed.R.Civ.P. 60(b) to Vacate and Set Aside Entry of Judgment. By Order dated November 1, 2021, the Northern District Court cursorily denied same, prompting Fyk to lodge another appeal with the Ninth Circuit Court on December 1, 2021, which such appeal is pending. The District Court's denial of Fyk's reconsideration motion practice yet again punctuated the problems with Section 230 that this constitutional challenge seeks to rectify.