# Exhibit P

 

Updated January 16, 2019

# The First Amendment: Categories of Speech

The Free Speech Clause of the First Amendment prohibits the government from "abridging the freedom of speech," but does not define what that freedom entails. The Supreme Court has long interpreted the Clause to protect against government regulation of certain core areas of "protected" speech (including some forms of expressive conduct) while giving the government greater leeway to regulate other types of speech, including a handful of limited categories that the Court has deemed largely "unprotected." This In Focus provides a broad overview of the main categories of protected and unprotected speech in First Amendment jurisprudence.

## Introduction

The Supreme Court's current approach to free speech is not entirely categorical. That is, just because a law implicates protected speech does not mean that law automatically violates the Free Speech Clause. Likewise, the First Amendment may still provide grounds to challenge government regulation of unprotected speech. As a threshold matter, a court may have to consider whether a law is directed at speech or conduct, and, if the latter, whether that conduct is inherently expressive. A court may also ask whether a law imposes a valid time, place, or manner restriction, *e.g.*, Hill v. Colorado, 530 U.S. 703 (2000), or impermissibly regulates speech on the basis of its content or the speaker's viewpoint, *e.g.*, Reed v. Town of Gilbert, 135 S. Ct. 2218 (2015).

Nevertheless, identifying the category of speech at issue (e.g., commercial speech, obscenity) is an important step in determining what First Amendment standards, including what level of judicial scrutiny, a court might apply to the law. Regulations of protected speech generally receive strict or intermediate scrutiny, which are high bars for the government to meet. In contrast, the government typically has more leeway to regulate unprotected speech. Thus, the category of speech is an important factor to consider in evaluating Congress's ability to legislate on a given subject.

## Protected Speech

The Supreme Court has recognized that the First Amendment's protections extend to individual and collective speech "in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984). Accordingly, speech is generally protected under the First Amendment unless it falls within one of the narrow categories of unprotected speech discussed in the next section. Whether the Court applies strict scrutiny or a lower form of scrutiny, however, depends on the character and context of the speech. For comparative purposes, this section discusses political speech and commercial speech, speech categories typically associated with two different tiers of scrutiny.

### Political and Ideological Speech

The Supreme Court has long considered political and ideological speech to be at the core of the First Amendment, including speech concerning "politics, nationalism, religion, or other matters of opinion." W. Va. State Bd. of Educ. v. Barnette, 319 U.S. 624, 642 (1943). Political speech can take other forms beyond the written or spoken word, such as money, *e.g.*, Buckley v. Valeo, 424 U.S. 1 (1976) (per curiam), or symbolic acts, *e.g.*, Texas v. Johnson, 491 U.S. 397 (1989). A government regulation that implicates political or ideological speech generally receives strict scrutiny in the courts, whereby the government must show that the law is narrowly tailored to achieve a compelling government interest.

### Commercial Speech

Commercial speech—generally, speech that merely proposes a commercial transaction or relates solely to the speaker's and the audience's economic interests—has historically received less First Amendment protection than political speech. For many years, courts deferred to legislatures when it came to economic regulations that impinged upon speech. However, the Court's 1976 decision in *Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, launched a trend of increased judicial scrutiny over laws implicating commercial speech.

Today, commercial speech restrictions typically receive at least an intermediate level of scrutiny if they are directed at non-misleading speech concerning a lawful activity. Under a test set out in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980), such laws are constitutional only if they directly advance a substantial government interest and are not broader than necessary to serve that interest. However, the Roberts Court has appeared receptive to applying a heightened level of scrutiny to certain commercial regulations, such as those that single out commercial speakers for less favorable treatment based on the content of their speech. *See, e.g.*, Sorrell v. IMS Health Inc., 564 U.S. 552 (2011). In contrast, courts have sometimes applied a less stringent standard than intermediate scrutiny to laws that require the disclosure of factual, uncontroversial information. *See* Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626 (1985).

### Unprotected Speech

In general, content-based restrictions on speech—laws that "appl[y] to particular speech because of the topic discussed or the idea or message expressed"—are presumptively

unconstitutional and subject to strict scrutiny. *Reed*, 135 S. Ct. at 2226-27. However, the Supreme Court has recognized limited categories of speech that the government may regulate *because of* their content, as long as it does so evenhandedly. *See* R.A.V. v. St. Paul, 505 U.S. 377, 382-86 (1992). The Court generally identifies these categories as obscenity, defamation, fraud, incitement, fighting words, true threats, speech integral to criminal conduct, and child pornography. The contours of these categories have changed over time, with many having been significantly narrowed by the Court. In addition, the Roberts Court has been disinclined to expand upon this list, declining to recognize, for example, violent entertainment or depictions of animal cruelty as new categories of unprotected speech. *See* Brown v. Entm't Merchs. Ass'n, 564 U.S. 786 (2011); United States v. Stevens, 559 U.S. 460 (2010).

- **Obscenity.** In order for material to be obscene, and thus unprotected under the First Amendment, it must, on the whole, "appeal to the prurient interest in sex" (as judged by contemporary community standards), depict or describe sexual conduct (as specifically defined by state law) in a patently offensive way, and lack "serious literary, artistic, political, or scientific value." *See* Miller v. California, 413 U.S. 15, 24 (1973).

- **Defamation.** Although the Supreme Court has held that defamatory statements—false statements of fact about a person—are not protected speech, the Court has also recognized that the prospect of civil or criminal penalties for making such statements might hamper free speech. Accordingly, under certain circumstances, the First Amendment requires a party alleging defamation to demonstrate that the speaker acted with a certain level of intent (e.g., in cases where the statement concerns a public official or figure) or to prove certain injuries. *See* Gertz v. Robert Welch, 418 U.S. 323 (1974); New York Times Co. v. Sullivan, 376 U.S. 254 (1964).

- **Fraud.** Recognizing that "some false statements are inevitable if there is to be an open and vigorous expression of views in public and private conversation," the Supreme Court has rejected a categorical First Amendment exception for false statements. United States v. Alvarez, 567 U.S. 709, 718-19 (2012) (plurality opinion). Nevertheless, the Court has stated that false statements can form the basis for other "legally cognizable harm[s]" such as defamation or fraud. *See id.* In general, the government may regulate fraudulent speech in order to prevent public or consumer deception. *See* Illinois *ex rel.* Madigan v. Telemarketing Assocs., 538 U.S. 600, 612 (2003). But, as with other types of speech regulations, it may not enact overbroad or unduly burdensome "prophylactic" rules for this purpose. *See* Riley v. Nat'l Fed'n of the Blind, 487 U.S. 781, 798 (1988); *Zauderer*, 471 U.S. at 649.

- **Incitement.** In *Brandenburg v. Ohio*, 395 U.S. 444, 447-48 (1969), the Supreme Court held that the First Amendment protects advocating the use of force or lawbreaking "except where such advocacy is directed to inciting or producing imminent lawless action and is likely to incite or produce such action."

- **Fighting words.** In 1942, the Supreme Court held that the First Amendment does not protect "fighting words"—those "likely to provoke the average person to retaliation, and thereby cause a breach of the peace." Chaplinsky v. New Hampshire, 315 U.S. 568, 574. However, the Court has since stated that "speech cannot be restricted simply because it is upsetting or arouses contempt." Snyder v. Phelps, 562 U.S. 443, 458 (2011). And although the Court continues to cite "fighting words" as an example of speech that the government may proscribe, it has not upheld a government action on the basis of that doctrine since *Chaplinsky*.

- **True threats.** The First Amendment does not bar the government from prohibiting some forms of intimidation such as "true" threats. *See* Watts v. United States, 394 U.S. 705, 708 (1969) (per curiam). True threats—as distinguished from "political hyperbole"—occur when the speaker "means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003).

- **Speech integral to criminal conduct.** In general, the First Amendment affords no protection to speech "used as an integral part of conduct in violation of a valid criminal statute." Giboney v. Empire Storage & Ice Co., 336 U.S. 490, 498 (1949). The Court has cited this rule as one reason the government may prohibit, for example, conspiracy or solicitation to commit a crime, offers or requests to obtain illegal material, or impersonating a government officer. *See* United States v. Williams, 553 U.S. 285, 297-98 (2008); *Alvarez*, 567 U.S. at 721.

- **Child pornography.** The Supreme Court in *New York v. Ferber*, 458 U.S. 747, 764 (1982), recognized child pornography as a category of unprotected speech separate from obscenity, in part because the advertising and sale of such materials is integral to the underlying criminal conduct of their production. Under *Ferber*, a prohibition on such materials must "be limited to works that *visually* depict sexual conduct by children below a specified age," and the "category of 'sexual conduct' proscribed must also be suitably limited and described."

## Additional Sources

For additional authorities and resources on the categories of speech, see JESSE H. CHOPER ET AL., CONSTITUTIONAL LAW: CASES, COMMENTS, AND QUESTIONS 788 (12th ed. 2015) (observing that although the unprotected categories are often viewed as exceptions, many aspects of "human communication remain[] untouched by the First Amendment—contract law, the law of wills, prosecution for perjury and blackmail, and much else"); KATHLEEN M. SULLIVAN & NOAH FELDMAN, CONSTITUTIONAL LAW 944-46 (19th ed. 2016) (discussing the roles of categorization and balancing in the Court's free speech jurisprudence); Eugene Volokh, *The "Speech Integral to Criminal Conduct" Exception*, 101 CORNELL L. REV. 981 (2016) (noting the resurgence of the Court's use of the "speech integral to criminal conduct" exception and proposing ways to define and limit its scope).

**Victoria L. Killion**, Legislative Attorney

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.