# Exhibit Z

# The Washington Post
*Democracy Dies in Darkness*

# Tech giants banned Trump. But did they censor him?

A year later, Facebook, Twitter and YouTube's suspension of the president leaves lingering questions about their power to control speech

By Will Oremus
Staff writer

January 7, 2022  |  Updated January 7, 2022 at 11:23 a.m. EST

 **Listen to article** 9 min

When Twitter, Facebook and YouTube suspended President Donald Trump's accounts one year ago, pointing to their rules against inciting violence, they barred him from speaking in three of the most influential forums of our time.

Whether you think those tech giants made the right call probably depends on how you feel about Trump. Polls show that most Democrats approved of the suspensions, while most Republicans disapproved.

But there's another, more conceptual debate that transcends partisan politics and carries implications beyond Trump's freedom to tweet. It's the question of whether the largest social media companies have become so critical to public debate that being banned or blacklisted — whether you're an elected official, a dissident or even just a private citizen who runs afoul of their content policies — amounts to a form of modern-day censorship. And, if so, are there circumstances under which such censorship is justified?

The answers aren't straightforward.

Trump, for his part, has routinely characterized his own deplatforming as censorship. In July, he sued Facebook, Twitter and YouTube's parent company Google in federal court, arguing that they had violated his First Amendment rights to speak freely. Legal scholars say that argument is unlikely to fly: The First Amendment generally protects Americans from undue speech restrictions by the government, not by private companies.

In the meantime, Trump's exile from social networks hasn't exactly muzzled him. Through news releases, mass emails, media appearances and rallies, the former president still commands a vast audience and remains a potent force in American politics.

Still, research has shown that his online reach has been sharply curtailed, with his public statements generating just a fraction of the Facebook engagement he had enjoyed before the suspension. The extent to which Trump has been quieted — but not silenced — was evident on Thursday's Jan. 6 anniversary. Trump was unable to upstage President Biden's speech with a volley of social media rants, but major outlets, such as Fox News, still gave his angry response prominent play.

Under U.S. law, social media companies generally have been understood to enjoy the same broad leeway as traditional media in deciding whose views to air — and whose they'd rather not. Initially more laissez-faire, Facebook, Twitter, YouTube and others have taken on increasing responsibility over the years for monitoring their networks for misinformation, harassment, hate speech and propaganda campaigns, a function they call "content moderation." They've done so largely in response to pressure from the public, the media and their own workers — not the U.S. government.

So when Florida in May passed a law that restricted how social media companies could "censor" users' posts, a federal judge quickly struck it down. It was the state's attempt to interfere, not the social media companies' content decisions, that was likely to violate the First Amendment, the judge wrote. (Florida has appealed.)

This legal framework — forged from the U.S. founders' suspicion of governmental power — would seem to support the view that censorship is something only state actors can do. That narrow definition is often embraced these days by liberals when figures on the right cry "censorship" at the deplatforming of Trump, anti-vaccine influencers and right-wing firebrands such as Rep. Marjorie Taylor Greene (R-Ga.), whose personal account Twitter permanently suspended on Jan. 2.

There are also historical reasons to view censorship as the province of the state. The word dates to ancient Rome, where the censor was a powerful government post with responsibility for conducting the census — and upholding public morality.

But "censorship" isn't strictly a legal term, and many definitions leave room for entities other than the state to engage in it. Some thinkers — not only on the right — argue that it's naive in the era of mass social media to discount the power over speech that tech titans such as Mark Zuckerberg now wield.

In fact, tech giants resisted wielding it against Trump for the majority of his presidency, fashioning murky new policies to justify exempting him and other public figures from the rules they applied to ordinary users. In the final months of his presidency, Twitter and Facebook began to take escalating actions against his accounts, fact-checking and removing specific posts before they both issued temporary suspensions in the wake of the Jan. 6 Capitol insurrection.

On Jan. 7, 2021, Facebook made Trump's suspension indefinite, and on Jan. 8 Twitter permanently suspended his account "due to the risk of further incitement of violence." YouTube followed suit on Jan. 12.

None of the platforms have reinstated him; Facebook said in June his suspension would last at least two years.

Trump's efforts over the past year to build a social media presence that doesn't depend on the big platforms have only underscored their dominance. In May, he launched a blog called "From the Desk of Donald Trump." It failed to attract readers and he shut it down after just a month. In October, he announced to fanfare that he planned to launch his own social network, called Truth Social. A beta version of it was defaced by pranksters immediately, and its launch has been delayed amid questions from regulators.

Jillian York, director for international freedom of expression at the nonprofit Electronic Frontier Foundation, is no fan of Trump. She believes the platforms probably made the right call by suspending him, and, if anything, should have done it sooner.

But she also believes that everyone — including those on the left — should be deeply concerned that unelected tech leaders possess such power over political speech, not only in the United States but throughout much of the world. And she thinks "censorship" is the right word for it, even when it's justified.

"By not calling it censorship, we do ourselves a disservice," York says. "We shouldn't limit the term to just things we disagree with."

Fighting over whether a given speech restriction is or isn't censorship, she adds, is often an excuse to avoid harder, more nuanced discussions as to exactly which types of speech ought to be restricted, and by whom, and on what authority.

"There are a lot of people in the US who will claim to be [free speech] absolutists but then basically be fine with censoring sexuality," she says. In contrast, expressions of sexuality are widely accepted in Germany, where York now lives, but there's broad consensus that censorship of Holocaust denial is warranted. In New Zealand, she adds, the democratically elected government has a Chief Censor who reviews the content of films and literature.

"I'm very wary of censorship," York says. "But the reason is, who do you trust to do it? It's not that all speech is totally equal and valid."

In other words: The problem York sees isn't social platforms banning a powerful figure such as Trump. It's their lack of legitimacy as arbiters of speech, especially when they're censoring people who lack the stature to speak out through other means.

David Kaye, a law professor at University of California at Irvine and the former U.N. Special Rapporteur on freedom of expression, agrees that we should be wary of tech giants' power over discourse — especially in countries that lack a robust free press. But he balks at applying the term "censorship" to content moderation decisions taken by the likes of Facebook, Twitter or YouTube in the United States.

"For Greene or any member of Congress, particularly on the right, to claim censorship by a platform I think is just a little bit silly," Kaye says. "First of all, they're often making those claims on massive traditional media platforms." (Greene recently decried her Twitter ban on Fox News' "Tucker Carlson Tonight.")

We're better off, Kaye believes, reserving the term "censorship" for the many instances around the world in which speech restrictions are backed by the power of the state. That can include cases in which "the state puts demands on social media to take down content, or criminalizes individuals who tweet," as has happened in China, the United Arab Emirates, Myanmar and elsewhere. But that's not the same as Twitter suspending Greene for incurring multiple strikes against its own terms of service.

"If we start to dilute the idea of censorship as a state-driven tool by equating it with what platforms are doing, we start to misunderstand what platforms are actually doing, and why they're doing it," Kaye said. "Which is not to say it isn't problematic" when tech companies ban political figures, he added — especially when they lack fair, transparent processes for making those decisions.

Chinmayi Arun, who has studied the intersection of law, technology and society in India and the United States, thinks depriving social platforms of the ability to restrict politicians' speech would be dangerous — but that shouldn't insulate those platforms from questions about the legitimacy of their decisions.

"Political leaders, especially heads of state, have a much greater capacity to incite violence than most individuals, and a social media platform should not enable dangerous incitement," says Arun, a resident fellow of Yale Law School's Information Society Project and affiliate of Harvard University's Berkman Klein Center. "It follows from this that social media platforms will have to refuse to carry political leaders' speech sometimes. That said, it would also be unhealthy for democracy if major social media platforms began to arbitrarily block political leaders."

What the three experts agree on is that the largest social platforms' ever-growing influence over the flow of information means scrutiny of their decisions is warranted, whether it's called censorship or not. Yet, as Arun suggested, that scrutiny shouldn't be limited to their decisions on what speech to block.

Too often overlooked in the debates over what social networks take down is that they aren't just passive conduits of information: Their recommendation algorithms and design decisions actively shape what speech gets heard, by how many and how it is framed — often fueling the kind of divisive content that they later face pressure to remove.

Facebook, Twitter and YouTube may or may not have censored Trump a year ago. But there's no doubt that for years prior, they amplified and enabled him. And if they hadn't suspended him, their systems would have continued to be complicit in his bid to undermine the presidential election.