# Exhibit D

LII  > Wex  > **Administrative Agency**

# Administrative Agency

A government body authorized to implement legislative directives by developing more precise and technical rules than possible in a legislative setting.  Many administrative agencies also have law enforcement responsibilities.

See Administrative law.

- wex
  - CIVICS
  - government
  - THE LEGAL PROCESS
  - administrative law
  - wex definitions

## 💼 Wex Toolbox

5

Ads by Google

Send feedback   Why this ad? ▷

**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**

Ads by Google

Send feedback   Why this ad? ▷

LII  > Wex  > **Nondelegation Doctrine**

# Nondelegation Doctrine

## Overview

The non-delegation doctrine is a principle in administrative law that Congress cannot delegate its legislative powers to other entities. This prohibition typically involves Congress delegating its powers to administrative agencies or to private organizations.

In *J.W. Hampton v. United States*, 276 U.S. 394 (1928), the Supreme Court clarified that when Congress does give an agency the ability to regulate, Congress must give the agencies an "intelligible principle" on which to base their regulations. This standard is viewed as quite lenient, and has rarely, if ever, been used to strike down legislation.

In *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."

## Further Reading

For more on the non-delegation doctrine, see this University of Pennsylvania Law Review article, this Notre Dame Law Review article, and this Stanford Law Review article.

- wex
  - CIVICS
  - government
  - the Constitution
  - constitutional law
  - wex definitions

- Keywords
  - administrative law
  - ADMINISTRATIVE AGENCIES
  - administrative review

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



💼 Wex Toolbox

**22**

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**

**TERMS OF USE**

**PRIVACY**



# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



LII  > Wex  > **Vagueness doctrine**

# Vagueness doctrine

## Definition

1) A constitutional rule that requires criminal laws to state explicitly and definitely what conduct is punishable.  Criminal laws that violate this requirement are said to be void for vagueness.  Vagueness doctrine rests on the due process clauses of the Fifth and Fourteenth Amendments of the U.S. Constitution.  By requiring fair notice of what is punishable and what is not, vagueness doctrine also helps prevent arbitrary enforcement of the laws.

2) Under vagueness doctrine, a statute is also void for vagueness if a legislature's delegation of authority to judges and/or administrators is so extensive that it would lead to arbitrary prosecutions.

## Illustrative caselaw

See, e.g. Skilling v. United States, 130 S.Ct. 2896 (2010).

## See also

- Vague

- Criminal procedure

- Civil procedure

- wex
  - wex definitions
  - constitutional law
  - courts and procedure

# Real Estate Attorney - New Jersey Business Attorney

Top real estate and transactional law firm scipiolaw.com



≡ Wex Toolbox

22

## Real Estate Attorney - New Jersey Business Attorney

Top real estate and transactional law firm scipiolaw.com

**ADVERTISE HERE**

**HELP**

**TERMS OF USE**

**PRIVACY**



LII  > Wex  **> Overbreadth**

# Overbreadth

A term used in describing a statute or regulation indicating that the particular law reaches beyond the scope of the subject matter it was originally intended to cover, causing it to cover activity that it was not intended to cover.

- wex
  - THE LEGAL PROCESS
  - statutory interpretation
  - wex definitions

- Keywords
  - statutory construction



## 💼 Wex Toolbox

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans

gplaw.squarespace.com



**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**



# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



LII  > Wex  > **Due Process**

# Due Process

Introduction

The Constitution states only one command twice. The Fifth Amendment says to the federal government that no one shall be "deprived of life, liberty or property without due process of law." The Fourteenth Amendment, ratified in 1868, uses the same eleven words, called the Due Process Clause, to describe a legal obligation of all states. These words have as their central promise an assurance that all levels of American government must operate within the law ("legality") and provide fair procedures. Most of this essay concerns that promise. We should briefly note, however, three other uses that these words have had in American constitutional law.

Incorporation

The Fifth Amendment's reference to "due process" is only one of many promises of protection the Bill of Rights gives citizens against the federal government. Originally these promises had no application at all against the states (see *Barron v City of Baltimore* (1833)). However, this attitude faded in *Chicago, Burlington & Quincy Railroad Company v. City of Chicago* (1897), when the court incorporated the Fifth Amendment's Takings Clause. In the the middle of the Twentieth Century, a series of Supreme Court decisions found that the Due Process Clause "incorporated" most of the important elements of the Bill of Rights and made them applicable to the states. If a Bill of Rights guarantee is "incorporated" in the "due process" requirement of the Fourteenth Amendment, state and federal obligations are exactly the same.

Substantive due process

The words "due process" suggest a concern with procedure rather than substance, and that is how many--such as Justice Clarence Thomas, who wrote "the Fourteenth Amendment's Due Process Clause is not a secret repository of substantive guarantees against unfairness"--understand the Due Process Clause. However, others believe that

 Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

doctrine of <u>substantive due process</u>, a theory that the Court has developed to defend rights that are not mentioned in the Constitution."

Substantive due process has been interpreted to include things such as the right to work in an ordinary kind of job, marry, and to raise one's children as a parent. In <u>Lochner v New York</u> (1905), the Supreme Court found unconstitutional a New York law regulating the working hours of bakers, ruling that the public benefit of the law was not enough to justify the substantive due process right of the bakers to work under their own terms. Substantive due process is still invoked in cases today, but not without criticism (See this <u>Stanford Law Review article</u> to see substantive due process as applied to contemporary issues).

The promise of legality and fair procedure

Historically, the clause reflects the <u>Magna Carta</u> of Great Britain, King John's thirteenth century promise to his noblemen that he would act only in accordance with law ("legality") and that all would receive the ordinary processes (procedures) of law. It also echoes Great Britain's Seventeenth Century struggles for political and legal regularity, and the American colonies' strong insistence during the pre-Revolutionary period on observance of regular legal order. The requirement that government function in accordance with law is, in itself, ample basis for understanding the stress given these words. A commitment to legality is at the heart of all advanced legal systems, and the Due Process Clause often thought to embody that commitment.

The clause also promises that before depriving a citizen of life, liberty or property, government must follow fair procedures. Thus, it is not always enough for the government just to act in accordance with whatever law there may happen to be. Citizens may also be entitled to have the government observe or offer fair procedures, whether or not those procedures have been provided for in the law on the basis of which it is acting. Action denying the process that is "due" would be unconstitutional. Suppose, for example, state law gives students a right to a public education, but doesn't say anything about discipline. Before the state could take that right away from a student, by expelling her for misbehavior, it would have to provide fair procedures, i.e. "due process."

How can we know whether process is due (what counts as a "deprivation" of "life, liberty or property"), when it is due, and what procedures have to be followed (what process is "due" in those cases)? If "due process" refers chiefly to procedural subjects, it says very little about these questions. Courts unwilling to accept

 papayaglobal   Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

limited. Most of the time it sought to deprive its citizens of life, liberty or property it did so through criminal law, for which the Bill of Rights explicitly stated quite a few procedures that had to be followed (like the right to a jury trial) — rights that were well understood by lawyers and courts operating in the long traditions of English common law. Occasionally it might act in other ways, for example in assessing taxes. In Bi-Metallic Investment Co. v. State Board of Equalization (1915), the Supreme Court held that only politics (the citizen's "power, immediate or remote, over those who make the rule") controlled the state's action setting the level of taxes; but if the dispute was about a taxpayer's individual liability, not a general question, the taxpayer had a right to some kind of a hearing ("the right to support his allegations by arguments however brief and, if need be, by proof however informal"). This left the state a lot of room to say what procedures it would provide, but did not permit it to deny them altogether.

Distinguishing Due Process

*Bi-Metallic* established one important distinction: the Constitution does not require "due process" for establishing laws; the provision applies when the state acts against individuals "in each case upon individual grounds" — when some characteristic unique to the citizen is involved. Of course there may be a lot of citizens affected; the issue is whether assessing the effect depends "in each case upon individual grounds." Thus, the due process clause doesn't govern how a state sets the rules for student discipline in its high schools; but it does govern how that state applies those rules to individual students who are thought to have violated them — even if in some cases (say, cheating on a state-wide examination) a large number of students were allegedly involved.

Even when an individual is unmistakably acted against on individual grounds, there can be a question whether the state has "deprive[d]" her of "life, liberty or property." The first thing to notice here is that there must be state action. Accordingly, the Due Process Clause would not apply to a private school taking discipline against one of its students (although that school will probably want to follow similar principles for other reasons).

Whether state action against an individual was a deprivation of life, liberty or property was initially resolved by a distinction between "rights" and "privileges." Process was due if rights were involved, but the state could act as it pleased in relation to privileges. But as modern society developed, it became harder to tell the two apart

 papayaglobal   Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

In the early 1970s, however, many scholars accepted that "life, liberty or property" was directly affected by state action, and wanted these concepts to be broadly interpreted. Two Supreme Court cases involved teachers at state colleges whose contracts of employment had not been renewed as they expected, because of some political positions they had taken. Were they entitled to a hearing before they could be treated in this way? Previously, a state job was a "privilege" and the answer to this question was an emphatic "No!" Now, the Court decided that whether either of the two teachers had "property" would depend in each instance on whether persons in their position, under state law, held some form of tenure. One teacher had just been on a short term contract; because he served "at will" — without any state law claim or expectation to continuation — he had no "entitlement" once his contract expired. The other teacher worked under a longer-term arrangement that school officials seemed to have encouraged him to regard as a continuing one. This could create an "entitlement," the Court said; the expectation need not be based on a statute, and an established custom of treating instructors who had taught for X years as having tenure could be shown. While, thus, some law-based relationship or expectation of continuation had to be shown before a federal court would say that process was "due," constitutional "property" was no longer just what the common law called "property"; it now included any legal relationship with the state that state law regarded as in some sense an "entitlement" of the citizen. Licenses, government jobs protected by civil service, or places on the welfare rolls were all defined by state laws as relations the citizen was entitled to keep until there was some reason to take them away, and therefore process was due before they could be taken away. This restated the formal "right/privilege" idea, but did so in a way that recognized the new dependency of citizens on relations with government, the "new property" as one scholar influentially called it.

When process is due

In its early decisions, the Supreme Court seemed to indicate that when only property rights were at stake (and particularly if there was some demonstrable urgency for public action) necessary hearings could be postponed to follow provisional, even irreversible, government action. This presumption changed in 1970 with the decision in *Goldberg v. Kelly,* a case arising out of a state-administered welfare program. The Court found that before a state terminates a welfare recipient's benefits, the state must provide a full hearing before a hearing officer, finding that the Due Process Clause required such a hearing.

 papayaglobal    Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

landmarks), and for administrative proceedings, which did not appear on the legal landscape until a century or so after the Due Process Clause was first adopted. Because there are the fewest landmarks, the administrative cases present the hardest issues, and these are the ones we will discuss.

The *Goldberg* Court answered this question by holding that the state must provide a hearing before an impartial judicial officer, the right to an attorney's help, the right to present evidence and argument orally, the chance to examine all materials that would be relied on or to confront and cross-examine adverse witnesses, or a decision limited to the record thus made and explained in an opinion. The Court's basis for this elaborate holding seems to have some roots in the incorporation doctrine.

Many argued that the *Goldberg* standards were too broad, and in subsequent years, the Supreme Court adopted a more discriminating approach. Process was "due" to the student suspended for ten days, as to the doctor deprived of his license to practice medicine or the person accused of being a security risk; yet the difference in seriousness of the outcomes, of the charges, and of the institutions involved made it clear there could be no list of procedures that were always "due." What the Constitution required would inevitably be dependent on the situation. What process is "due" is a question to which there cannot be a single answer.

A successor case to Goldberg, *Mathews v. Eldridge,* tried instead to define a method by which due process questions could be successfully presented by lawyers and answered by courts. The approach it defined has remained the Court's preferred method for resolving questions over what process is due. *Mathews* attempted to define how judges should ask about constitutionally required procedures. The Court said three factors had to be analyzed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Using these factors, the Court first found the private interest here less significant than in Goldberg. A person who is arguably disabled but provisionally denied disability benefits, it said, is more likely to be able to find other "potential sources of temporary income" than a person who is arguably impoverished but provisionally denied welfare assistance. Respecting the second, it found the risk of error in using written procedures for the initial judgment to be low, and unlikely to be significantly reduced

 papayaglobal    Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

now attached more importance than the *Goldberg* Court had to the government's claims for efficiency. In particular, the Court assumed (as the *Goldberg* Court had not) that "resources available for any particular program of social welfare are not unlimited." Thus additional administrative costs for suspension hearings and payments while those hearings were awaiting resolution to persons ultimately found undeserving of benefits would subtract from the amounts available to pay benefits for those undoubtedly eligible to participate in the program. The Court also gave some weight to the "good-faith judgments" of the plan administrators what appropriate consideration of the claims of applicants would entail.

*Matthews* thus reorients the inquiry in a number of important respects. First, it emphasizes the variability of procedural requirements. Rather than create a standard list of procedures that constitute the procedure that is "due," the opinion emphasizes that each setting or program invites its own assessment. About the only general statement that can be made is that persons holding interests protected by the due process clause are entitled to "some kind of hearing." Just what the elements of that hearing might be, however, depends on the concrete circumstances of the particular program at issue. Second, that assessment is to be made concretely and holistically. It is not a matter of approving this or that particular element of a procedural matrix in isolation, but of assessing the suitability of the ensemble in context.

Third, and particularly important in its implications for litigation seeking procedural change, the assessment is to be made at the level of program operation, rather than in terms of the particular needs of the particular litigants involved in the matter before the Court. Cases that are pressed to appellate courts often are characterized by individual facts that make an unusually strong appeal for proceduralization. Indeed, one can often say that they are chosen for that appeal by the lawyers, when the lawsuit is supported by one of the many American organizations that seeks to use the courts to help establish their view of sound social policy. Finally, and to similar effect, the second of the stated tests places on the party challenging the existing procedures the burden not only of demonstrating their insufficiency, but also of showing that some specific substitute or additional procedure will work a concrete improvement justifying its additional cost. Thus, it is inadequate merely to criticize. The litigant claiming procedural insufficiency must be prepared with a substitute program that can itself be justified.

 papayaglobal   Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

hard problem for the courts in the Mathews approach, which may be unavoidable, is suggested by the absence of fixed doctrine about the content of "due process" and by the very breadth of the inquiry required to establish its demands in a particular context. A judge has few reference points to begin with, and must decide on the basis of considerations (such as the nature of a government program or the probable impact of a procedural requirement) that are very hard to develop in a trial.

While there is no definitive list of the "required procedures" that due process requires, Judge Henry Friendly generated a list that remains highly influential, as to both content and relative priority:

1. An unbiased tribunal.
2. Notice of the proposed action and the grounds asserted for it.
3. Opportunity to present reasons why the proposed action should not be taken.
4. The right to present evidence, including the right to call witnesses.
5. The right to know opposing evidence.
6. The right to cross-examine adverse witnesses.
7. A decision based exclusively on the evidence presented.
8. Opportunity to be represented by counsel.
9. Requirement that the tribunal prepare a record of the evidence presented.
10. Requirement that the tribunal prepare written findings of fact and reasons for its decision.

This is not a list of procedures which are required to prove due process, but rather a list of the kinds of procedures that might be claimed in a "due process" argument, roughly in order of their perceived importance.

Author

The original text of this article was written and submitted by Peter Strauss

menu of sources

Other References

Key Internet Sources

- Rights of Suspects and Defendants (Nolo)

- wex
  - CIVICS
  - the Constitution

 Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

- due process
  - SUBSTANTIVE DUE PROCESS
  - PROCEDURAL DUE PROCESS

## 💼 Wex Toolbox

◀ **1.2K**

 Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**

**TERMS OF USE**

**PRIVACY**

[LII]

 Discover the Smartest Global People & Payroll Platform **in Our Interactive, Self-Guided Tour.** 

LII  > Wex  > **Nondelegation Doctrine**

# Nondelegation Doctrine

## Overview

The non-delegation doctrine is a principle in administrative law that Congress cannot delegate its legislative powers to other entities. This prohibition typically involves Congress delegating its powers to administrative agencies or to private organizations.

In *J.W. Hampton v. United States*, 276 U.S. 394 (1928), the Supreme Court clarified that when Congress does give an agency the ability to regulate, Congress must give the agencies an "intelligible principle" on which to base their regulations. This standard is viewed as quite lenient, and has rarely, if ever, been used to strike down legislation.

In *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Supreme Court held that "Congress is not permitted to abdicate or to transfer to others the essential legislative functions with which it is thus vested."

## Further Reading

For more on the non-delegation doctrine, see this University of Pennsylvania Law Review article, this Notre Dame Law Review article, and this Stanford Law Review article.

- wex
  - CIVICS
  - government
  - the Constitution
  - constitutional law
  - wex definitions
- Keywords
  - administrative law
  - ADMINISTRATIVE AGENCIES
  - administrative review



# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com

💼 Wex Toolbox

**22**

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**

**TERMS OF USE**

**PRIVACY**



# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



LII  > Wex  > **Administrative Law**

# Administrative Law

## Definition

Branch of law governing the creation and operation of administrative agencies. Of special importance are the powers granted to administrative agencies, the substantive rules that such agencies make, and the legal relationships between such agencies, other government bodies, and the public at large.

## Overview

Administrative law encompasses laws and legal principles governing the administration and regulation of government agencies (both Federal and state). Agencies are delegated power by Congress (or in the case of a state agency, the state legislature), to act as agencies responsible for carrying out certain prerogative of the Congress. Agencies are created through their own organic statutes, which establish new laws, and doing so, creates the respective agencies to interpret, administer, and enforce those new laws. Generally, administrative agencies are created to protect a public interest rather than to vindicate private rights.

### Administrative Law--Structure of Agencies

While some textualist scholars argue that administrative agencies are unconstitutional, particularly because of unconstitutional delegation of law-making power, the current jurisprudence in administrative law deems agencies constitutional, and necessary in the current society in the functional and pragmatic sense. Indeed, because the Congress cannot enforce and administer every law it enacts, it must rely on the agencies to administer, interpret, enforce, and otherwise regulate various federal laws the Congress has enacted. Some of the most notable agencies are the executive agencies such as the Department of Justice and Department of Defense, etc. as well as some independent agencies such as the Federal Trade Commission, Securities and Exchange Commission, and the Environmental Protection Agency, all of which are independent from the direct control of the President. These agencies have

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com

However, despite their enormous powers, the governmental agencies must still act within Constitutional and statutory parameters. These and other limits have been codified, for the most part, into the overall statute known as the Administrative Procedure Act (APA) and state analogs, which provides for the roles and powers of all the agencies, and the procedures by which they must abide by in all their functions. APA categorizes administrative functions into formal and informal rulemaking and adjudication, which have binding effects, as well as guidance, which has no binding effect. The APA further prescribes certain procedural rules by which the agencies need to follow before acting in one of the functions listed.

The APA is a remedial statute designed to ensure uniformity and openness in the procedures used by federal agencies. The Act is comprised of a comprehensive regulatory scheme governing regulations, adjudications, and rule making in general terms. The APA is the major source for federal administrative agency law, while state agencies' administration and regulation are governed by comparable state acts.

For example, under the federal APA and judicial interpretations of the APA, agencies purporting to engage in rulemaking function must give notice of proposed rulemaking before adopting the final rule. The final rule must follow a logical outgrowth of the proposed rule, and must display agencies' consideration of all comments received and reviewed.

In its adjudicatory functions, the agencies often have their own judicial body, known as the Administrative Law Judge, who are part of their respective agency, but must be independent from the agency officials involved in certain action. The administrative law judges are to adjudicate claims or disputes involving the agency, as an impartial trier of fact and law, and are prohibited by APA from engaging in any ex parte contact with the agency, unless upon notice and opportunities to all parties involved in the proceeding.

Finally, the agencies have much less procedural limitations in its guidance actions, where the agencies can issue interpretive rulings or guidance letters explaining its stance on certain rules, etc, but without the force of law.


**Administrative Law -- Judicial Review of Agency Actions**

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans

gplaw.squarespace.com



First, under Chevron deference, the courts apply an extremely deferential standard of review, in which the courts defer to agency interpretations of such statutes unless they are unreasonable.

Second, under the Auer deference, courts defer to the agency interpretations of its own ambiguous regulations. Similar to the Chevron deference, the courts have that the agency's interpretation of its own regulations are binding unless it is plainly erroneous or inconsistent with the regulation.

Third, If the Chevron or Auer deference do not apply, the Skidmore deference applies, in which the courts do not give a binding deference to the agency's interpretation, but give varying amount of deference according to the agency's expertise in the particular matter.

*Last Edited By* **Jonathan Kim**, *June 2017.*

## Menu of sources

### Federal Material

Federal Statutes

- 5 U.S.C. - Government Organization and Employees
- 5 U.S.C., Ch. 5 - Federal Administrative Procedure Act

Federal Agency Regulations

- See generally the Code of Federal Regulations

Federal Judicial Decisions

- Supreme Court:

- Recent Administrative Law Decisions

- Chevron U.S.A., Inc. v. NDRC, 467 U.S. 837 (1984)
- Auer v. Robbins, 519 U.S. 452 (1997)
- Skidmore v. Swift, 323 U.S. 134 (1944).

- LII Bulletin Oral Argument Previews

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com

State Statutes

- State Statutes Dealing with State Government

State Judicial Decisions

- NY Court of Appeals:

- Administrative Law Cases
- Commentary from liibulletin-ny

- Appellate Decisions from Other States

Other References

Key Internet Sources

- EFOIA Guidelines
- Administrative Law News
- ABA Section of Administrative Law & Regulatory Practice
- ABA Administrative Procedure Database (Florida State University College of Law)
- House Judiciary Committee (includes information from Subcommittee on Commercial and Administrative Law)
- Weblogs

- Indiana Law Blog: Administrative Law and Decisions
- University of Toronto Law School Faculty Blog: Administrative Law
- FedLawyerGuy
- Government Contracts Litigation

Useful Off net (or Subscription - $) Sources

- Good Starting Point in Print: Alfred C. Aman, Jr. & William T. Mayton, *Hornbook on Administrative Law*, West Group (2001)

menu of sources

Federal Material

Federal Statutes

- 5 U.S.C. - Government Organization and Employees

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



- Supreme Court:
    - Recent Administrative Law Decisions
    - Selected Historic Decisions
    - liibulletin Oral Argument Previews
- U.S. Circuit Courts of Appeals: Recent Decisions on Administrative Law

State Material

State Statutes

- State Statutes Dealing with State Government

State Judicial Decisions

- NY Court of Appeals:
    - Administrative Law Cases
    - Commentary from liibulletin-ny
- Appellate Decisions from Other States

Other References

Key Internet Sources

- EFOIA Guidelines
- Administrative Law News
- ABA Section of Administrative Law & Regulatory Practice
- ABA Administrative Procedure Database (Florida State University College of Law)
- House Judiciary Committee (includes information from Subcommittee on
  Commercial and Administrative Law)
- Weblogs
    - Indiana Law Blog: Administrative Law and Decisions
    - University of Toronto Law School Faculty Blog: Administrative Law
    - FedLawyerGuy
    - Government Contracts Litigation

Useful Offnet (or Subscription - $) Sources

- Good Starting Point in Print: Alfred C. Aman, Jr. & William T. Mayton, *Hornbook
  on Administrative Law*, West Group (2001)
- LII Downloads

other topics

Category: Governmental Organization, Power, and Procedure

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



💼 Wex Toolbox

◀ **174**

## Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans

gplaw.squarespace.com

**ACCESSIBILITY**

**ABOUT LII**

**CONTACT US**

**ADVERTISE HERE**

**HELP**

**TERMS OF USE**

**PRIVACY**

[LII]

# Busted? - Criminal Defense Attorney

Been Arrested or Investigated? One of the State's Leading Firms. Payment Plans
gplaw.squarespace.com



LII  > U.S. Constitution Annotated  > Article I. Legislative Branch  > Section I
> Delegation of Legislative Power
> **The History of the Doctrine of Nondelegability**

# The History of the Doctrine of Nondelegability

U.S. Constitution Annotated

## ArtI.S1.1.1 The History of the Doctrine of Nondelegability

Article I, Section 1:

> All legislative Powers herein granted shall be vested in a Congress of the
> United States, which shall consist of a Senate and House of Representatives.

The Supreme Court has sometimes declared categorically that "the legislative
power of Congress cannot be delegated," [1] and on other occasions has recognized
more forthrightly, as Chief Justice Marshall did in 1825, that, although Congress
may not delegate powers that "are strictly and exclusively legislative," it may
delegate "powers which [it] may rightfully exercise itself." [2] The categorical
statement has never been literally true, the Court having upheld the delegation at
issue in the very case in which the statement was made.[3] The Court has long
recognized that administration of the law requires exercise of discretion,[4] and that,
"in our increasingly complex society, replete with ever changing and more technical
problems, Congress simply cannot do its job absent an ability to delegate power
under broad general directives." [5] The real issue is where to draw the line. Chief
Justice Marshall recognized "that there is some difficulty in discerning the exact
limits," and that "the precise boundary of this power is a subject of delicate and
difficult inquiry, into which a court will not enter unnecessarily." [6] Accordingly, the

# New Jersey Launches New Polic
# Cars Used Less Than 50 Miles/D

grants of authority that have been challenged as invalid delegations of legislative power.

The modern doctrine may be traced to the 1928 case, J. W. Hampton, Jr. & Co. v. United States, in which the Court, speaking through Chief Justice Taft, upheld Congress's delegation to the President of the authority to set tariff rates that would equalize production costs in the United States and competing countries.[7] Although formally invoking the contingency theory, the Court's opinion also looked forward, emphasizing that in seeking the cooperation of another branch Congress was restrained only according to "common sense and the inherent necessities" of the situation.[8] This vague statement was elaborated somewhat in the statement that the Court would sustain delegations whenever Congress provided an "intelligible principle" to which the President or an agency must conform.[9]

As characterized by the Court, the delegations struck down in 1935 in Panama Refining[10] and Schechter[11] were not only broad but unprecedented. Both cases involved provisions of the National Industrial Recovery Act. At issue in Panama Refining was a delegation to the President of authority to prohibit interstate transportation of what was known as "hot oil" —oil produced in excess of quotas set by state law. The problem was that the Act provided no guidance to the President in determining whether or when to exercise this authority, and required no finding by the President as a condition of exercise of the authority. Congress "declared no policy, . . . established no standard, [and] laid down no rule," but rather "left the matter to the President without standard or rule, to be dealt with as he pleased."[12] At issue in Schechter was a delegation to the President of authority to promulgate codes of fair competition that could be drawn up by industry groups or prescribed by the President on his own initiative. The codes were required to implement the policies of the Act, but those policies were so general as to be nothing more than an endorsement of whatever might be thought to promote the recovery and expansion of the particular trade or industry. The President's authority to approve, condition, or adopt codes on his own initiative was similarly devoid of meaningful standards, and "virtually unfettered."[13] This broad delegation was "without precedent." The Act supplied "no standards" for any trade or industry group, and, unlike other broad delegations that had been upheld, did not set policies that could be implemented by an administrative agency required to follow "appropriate administrative procedure." "Instead of prescribing rules of conduct, [the Act] authorize[d] the making of codes to prescribe them."[14]

# New Jersey Launches New Polic

# Cars Used Less Than 50 Miles/D

among securities holders,[18] to fix "fair and equitable" commodities prices,[19] to determine "just and reasonable" rates,[20] and to regulate broadcast licensing as the "public interest, convenience, or necessity require." [21] During all this time the Court "has not seen fit . . . to enlarge in the slightest [the] relatively narrow holdings" of Panama Refining and Schechter.[22] Again and again, the Court has distinguished the two cases, sometimes by finding adequate standards in the challenged statute,[23] sometimes by contrasting the vast scope of the power delegated by the National Industrial Recovery Act,[24] and sometimes by pointing to required administrative findings and procedures that were absent in the NIRA.[25] The Court has also relied on the constitutional doubt principle of statutory construction to narrow interpretations of statutes that, interpreted broadly, might have presented delegation issues.[26]

In more recent years, however, the modern application of the J. W. Hampton Court's intelligible principle test and the broad deference it affords congressional delegations of authority to the other branches has met with growing skepticism from some members of the Court.[27] (Gorsuch, J., concurring) (noting "thoughtful" commentary questioning whether the current intelligible principle test serves "as much as a protection against the delegation of legislative authority as a license for it, undermining the separation between the legislative and executive powers that the founders thought essential" ). The 2019 case of Gundy v. United States highlighted an emerging split on the High Court with respect its nondelegation doctrine jurisprudence.[28] In that case, a criminal defendant challenged a provision of the Sex Offender Registration and Notification Act (SORNA) allowing the Attorney General to (1) "specify the applicability" of SORNA's registration requirements to individuals convicted of a sex offense prior to the statute's enactment and (2) "prescribe rules for [their] registration" in jurisdictions where the offender resides, works, or is a student.[29] ; see also Gundy, slip op. at 2 (plurality opinion) (discussing SORNA's "basic registration scheme" ). Writing for a four-Justice plurality, Justice Kagan interpreted this provision as limiting the Attorney General's authority to "require pre-Act offenders to register as soon as feasible," [30] concluding that the delegation "easily passe[d] constitutional muster." [31] For the plurality, the Attorney General's authority under SORNA, when compared to other delegations the Court had previously upheld, was "distinctly small-bore." [32] Notably, Justice Kagan's opinion was met by a dissent, authored by Justice Gorsuch and joined by Chief Justice Roberts and Justice Thomas, which argued that the statute unconstitutionally provided the Attorney General "unfettered

# New Jersey Launches New Polic
# Cars Used Less Than 50 Miles/D

delegations are necessary.[35] Providing the fifth vote to affirm the petitioner's conviction was Justice Alito, who, while agreeing that the plurality correctly applied the modern nondelegation case law, indicated he would "support [the] effort" of the dissenting Justices to reconsider the intelligible principle test once a majority of the Court concurred in rethinking the doctrine.[36] Accordingly, Gundy witnessed the Court evenly split on how deferential the Court should be with regard to congressional delegations to the other branches, raising questions as to whether the nondelegation doctrine would remain moribund.

**1** Footnotes
United States v. Shreveport Grain & Elevator Co., 287 U.S. 77, 85 (1932). *See also* Field v. Clark, 143 U.S. 649, 692 (1892). ⬆

**2** Wayman v. Southard, 23 U.S. (10 Wheat.) 1, 41 (1825). ⬆

**3** The Court in Shreveport Grain & Elevator upheld a delegation of authority to the FDA to allow reasonable variations, tolerances, and exemptions from misbranding prohibitions that were backed by criminal penalties. It was "not open to reasonable dispute" that such a delegation was permissible to fill in details "impracticable for Congress to prescribe." ⬆

**4** J. W. Hampton, Jr. & Co. v. United States, 276 U.S. 394, 406 (1928) ( "In determining what [Congress] may do in seeking assistance from another branch, the extent and character of that assistance must be fixed according to common sense and the inherent necessities of the government co-ordination" ). ⬆

**5** Mistretta v. United States, 488 U.S. 361, 372 (1989). *See also* Sunshine Anthracite Coal Co. v. Adkins, 310 U.S. 381, 398 (1940) ( "Delegation by Congress has long been recognized as necessary in order that the exertion of legislative power does not become a futility" ). ⬆

**6** Wayman v. Southard, 23 U.S. (10 Wheat.) at 42. For particularly useful discussions of delegations, *see* 1 K. Davis, Administrative Law Treatise Ch. 3 (2d ed., 1978); L. Jaffe, Judicial Control of Administrative Action ch. 2 (1965). ⬆

**7** 276 U.S. 394 (1928). ⬆

**8** 276 U.S. at 406. ⬆

**9** 276 U.S. at 409. The "intelligible principle" test of Hampton is the same as the "legislative standards" test of A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495, 530 (1935), and Panama Refining Co. v. Ryan, 293 U.S. 388, 421 (1935). ⬆

**10** Panama Refining Co. v. Ryan, 293 U.S. 388 (1935). ⬆

**11** A. L. A. Schechter Poultry Corp. v. United States, 295 U.S. 495 (1935). ⬆

New Jersey Launches New Polic

Cars Used Less Than 50 Miles/D

**14** 295 U.S. at 541. Other concerns were that the industrial codes were backed by criminal sanction, and that regulatory power was delegated to private individuals. *See* Mistretta v. United States, 488 U.S. 361, 373 n.7 (1989). ⬏

**15** A year later, the Court invalidated the Bituminous Coal Conservation Act on delegation grounds, but that delegation was to private entities. Carter v. Carter Coal Co., 298 U.S. 238 (1936). ⬏

**16** Mistretta v. United States, 488 U.S. 361, 373 (1989). ⬏

**17** Lichter v. United States, 334 U.S. 742 (1948). ⬏

**18** American Power & Light Co. v. SEC, 329 U.S. 90 (1946). ⬏

**19** Yakus v. United States, 321 U.S. 414 (1944). ⬏

**20** FPC v. Hope Natural Gas Co., 320 U.S. 591 (1944). ⬏

**21** National Broadcasting Co. v. United States, 319 U.S. 190 (1943). ⬏

**22** Hampton v. Mow Sun Wong, 426 U.S. 88, 122 (1976) (Justice Rehnquist, dissenting). ⬏

**23** Mistretta v. United States, 488 U.S. 361, 373–79 (1989). ⬏

**24** *See, e.g.*, Fahey v. Mallonee, 332 U.S. 245, 250 (1947) (contrasting the delegation to deal with "unprecedented economic problems of varied industries" with the delegation of authority to deal with problems of the banking industry, where there was "accumulated experience" derived from long regulation and close supervision); Whitman v. American Trucking Ass'ns, 531 U.S. 457, 474 (2001) (the NIRA "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition'" ). ⬏

**25** *See, e.g.*, Yakus v. United States, 321 U.S. 414, 424–25 (1944) (Schechter involved delegation "not to a public official . . . but to private individuals" ; it suffices if Congress has sufficiently marked the field within which an administrator may act "so it may be known whether he has kept within it in compliance with the legislative will." ) ⬏

**26** *See, e.g.*, Industrial Union Dep't v. American Petroleum Inst., 448 U.S. 607, 645–46 (1980) (plurality opinion) (invalidating an occupational safety and health regulation, and observing that the statute should not be interpreted to authorize enforcement of a standard that is not based on an "understandable" quantification of risk); National Cable Television Ass'n v. United States, 415 U.S. 336, 342 (1974) ( "hurdles revealed in [Schechter and J. W. Hampton, Jr. & Co. v. United States] lead us to read the Act narrowly to avoid constitutional problems" ). ⬏

27

# New Jersey Launches New Polic
# Cars Used Less Than 50 Miles/D

delegation of legislative authority as a license for it, undermining the separation between the legislative and executive powers that the founders thought essential" ). ⬑

**28** *See* 588 U.S. ____, No. 17-6086, slip op. (2019). While criticisms of the intelligible principle doctrine have become more pronounced in recent years, some former members of the Court had argued for striking down legislation on nondelegation grounds. *See, e.g.*, Indus. Union Dep't, AFL-CIO v. Am. Petroleum Inst., 448 U.S. 607, 675 (1980) (Rehnquist, J., concurring); Arizona v. California, 373 U.S. 546, 626–27 (1963) (Harlan, J., dissenting). ⬑

**29** 34 U.S.C. § 20913(d); *see also* Gundy, slip op. at 2 (plurality opinion) (discussing SORNA's "basic registration scheme" ). ⬑

**30** *See* Gundy, slip op. at 16 (plurality opinion). ⬑

**31** *Id.* at 1. ⬑

**32** *Id.* at 17. ⬑

**33** *Id.* at 24 (Gorsuch, J., dissenting). ⬑

**34** *Id.* at 17 (Gorsuch, J., dissenting). ⬑

**35** *Id.* at 17–18 (plurality opinion). ⬑

**36** *Id.* at 1 (Alito, J., concurring). Justice Kavanaugh took no part in the consideration or decision in Gundy, as he was appointed to the Supreme Court after oral argument occurred in the case. ⬑

💼 U.S. Constitution Annotated
Toolbox

⌃

# New Jersey Launches New Polic
# Cars Used Less Than 50 Miles/D

# New Jersey Launches New Polic
## Cars Used Less Than 50 Miles/D

**HELP**

**TERMS OF USE**

**PRIVACY**

