## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CASE NO.: 22-cv-01144-RC

JASON FYK,

    *Plaintiff*,

v.

UNITED STATES OF AMERICA,

    *Defendant*.

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S SEPTEMBER 13, 2022, MOTION TO DISMISS [D.E. 9]

Plaintiff, Jason Fyk ("Fyk"), by and through undersigned counsel and pursuant to Federal Rules of Civil Procedure 8 and 12, hereby responds in opposition to the Motion to Dismiss or, in the Alternative, Motion Strike [D.E. 9] ("Motion to Dismiss) filed by Defendant, the United States of America (the "Government") on September 13, 2022, as follows:[1, 2, 3]

---

[1] As to conferral, the Motion to Dismiss states, in pertinent part, as follows: "With respect to the alternative motion to strike the Complaint, Defendant's counsel met and conferred with *pro se* Plaintiff by phone." [D.E. 9] at 1. This is false, there was no phone call with Mr. Fyk or with undersigned counsel … nobody on Plaintiff's side has had a phone call with defense counsel, Benton G. Peterson, Esq. / Asst. U.S. Atty. Regarding the Rule 8 / Rule 12(f) / Plaintiff-has-said-too-much "conferral," what transpired between counsel was the email train attached hereto as **Exhibit 1** and incorporated fully herein by reference.

[2] The first page of the Government's Motion to Dismiss states that the dismissal effort sounds in Rules 12(b)(1), 12(b)(6), and 8 / 12(f). The bulk of the Motion to Dismiss, however, revolves around the Government's contention that the action does not check the three threshold boxes that are the three rudimentary elements of Article III standing (injury / harm, traceability / causal connection, redressability). Indeed, the Motion to Dismiss' very brief discussion of Rule 12(b)(6) as a purported basis for dismissal, *see* Mot. to Dismiss "Argument" § II (*Rule 12(b)(6) Failure to State a Claim*), revolves around the same purported lack of traceability / causal connection as the Governments Rule 12(b)(1) Article III argument.

[3] "[T]he United States Attorney is 'the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its *obligation* to govern

1

## INTRODUCTION

Addressing Fyk's Constitutional Challenge [D.E. 1] / [D.E. 2] ("CC")[4, 5] (challenging the constitutionality / legal tenableness of Title 47, United States Code, Section 230) should not be avoided by this Court, at this dismissal stage or otherwise:

> Congress and the States are free to develop their own safeguards … , so long as they are fully as effective … . [T]he issues presented are of constitutional dimensions and *must be determined* by the courts. … Judicial solutions to problems of constitutional dimension have evolved decade by decade. As courts have been presented with the need to enforce constitutional rights, they have found means of doing so. That was our responsibility when Escobedo was before us and it is our responsibility today. Where rights secured by the Constitution are involved, there can be no rule making or legislation which would abrogate them.

---

at all; and whose interest, therefore, in [the defense of a constitutional challenge] is not that it shall win a case, but that justice shall be done.'" *Strickler v. Greene*, 527 U.S. 263, 281 (1999) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)).

[4] The CC was filed on April 26, 2022. *See* [D.E. 1]. Undersigned counsel was promptly advised by the DDC clerk that undersigned counsel's District of Columbia licensure / admission did not carry weight in this Court and that the clerk had initially overlooked the issue of undersigned counsel's District of Columbia and DDC licensure / admission. Per clerk suggestions, the CC was promptly (re-)filed *pro se* and service was held until undersigned counsel's DDC licensure / admission was processed in early June 2022. On June 6, 2022, undersigned counsel received his DDC license admission, and, so, undersigned counsel filed his Notice of Appearance on equal date. *See* [D.E. 4]. Thereafter, service was effectuated, *see* [D.E. 5] (the Government was served on June 7, 2022), and it took the Government over three months to file the Motion to Dismiss. In sum, there was / is no substantive difference between [D.E. 1] and [D.E. 2].

[5] Fyk's CC sounds in declaratory relief. *See, e.g.*, [D.E. 2] at ¶ 2 ("Pursuant to Federal Rule of Civil Procedure 5.1 and Title 28, United States Code, Section 2201 (Federal Rule of Civil Procedure 57), this is a constitutional challenge of the CDA"); *see also* the style of the action – "Complaint for Declaratory Judgment." And, recall, the declarations implicated by the CC involve not only the myriad ways in which Section 230 is unconstitutional (*e.g.*, Non-Delegation Doctrine / Major Questions Doctrine, Void-for-Vagueness Doctrine, Substantial Overbreadth Doctrine) but also the myriad ways in which Section 230 is legally untenable (*e.g.*, Absurdity Canon, Harmonious-Reading Canon, Whole-Text Canon, Surplusage Canon, Irreconcilability Canon). But the point of the CC is that whether Section 230 is legally untenable or unconstitutional or some combination thereof, Section 230 has to be eradicated (assuming, of course, that the Court is first able assures itself that there is not a constitutional application available).

*Miranda v. State of Arizona*, 384 U.S. 436, 490-491 (1966) (internal citation omitted) (emphasis added). *See also* [D.E. 2] at ¶ 4 (citing *Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("it is emphatically the province and duty of the judicial department to say what the law is").

Fyk's professional life was reduced to rubble, his online business destroyed, by the unconstitutionality / legal untenableness of a law (a law that was / is not "fully [ ] effective"), Title 47, United States Code, Section 230 (the Communications Decency Act, "CDA," "Section 230," "230"), and the Government's wrongful delegation (in contravention of at least the constitutional doctrine that is the Non-Delegation / Major Questions Doctrine(s)) of enforcement of that unconstitutional / legally untenable law to third-party private Internet service providers who (among other things) have commercial interests in the discretionary enforcement proceedings.)[6]

---

[6] "In a separate, independent action (discussed further below), the CDA was applied (at least so far; this separate, independent action is presently ... [in] Ninth Circuit Court [appellate proceedings]) to immunize the commercial activities of a private actor (Facebook, Inc., "Facebook") against a commercial competitor (Fyk) without a showing that the private actor (Facebook) was acting as a 'Good Samaritan' or in 'good faith' or legally." [D.E. 2] at ¶ 5. First, commercial entities engaged in commerce (like Facebook) simply cannot infringe upon rights; *cf.* private entities not engaged in "commerce" (*e.g.*, private clubs / associations / organizations) who have a more colorable position (arguably, at least) on circumscribing rights. Second, and more germane to the instant motion practice, the CDA was not enacted by Facebook. Fyk sued Facebook for Facebook's unlawful actions in a "separate independent action." Here Fyk is suing the Government for its own actions in enacting an unconstitutional and legally untenable law and enforcing (or, rather, delegating, in form and / or function, such "enforcement" in contravention of constitutional doctrine(s)) that law in violation of Fyk's and everyone else's rights. All put differently, Fyk sued Facebook for what Facebook did to Fyk. In that case, so far, Fyk was denied a single day in Court, not because of Facebook but because of the royally messed up law that is the CDA. And, so, Fyk has sued the Government over the royally messed up law that is the CDA. To be abundantly clear, the denial of Fyk's ability to seek redress against Facebook was / is squarely because of the unconstitutionality / legal untenableness of the CDA that Facebook has thus far wrongly been allowed, by the California federal court system, to hide behind – Fyk's inability to pursue Facebook on the merits (*i.e.*, on the illegalities Facebook subjected Fyk to), because of the unconstitutionality / legal untenableness of the CDA, is the root of Fyk's occupational / economic destruction because, again, Fyk has been unable (thus far) to hold Facebook accountable for its illegal actions. It is this root evil (the unconstitutionality / legal untenableness of the CDA, enacted and "enforced" by the Government) around which this lawsuit revolves, not Facebook's illegal actions (intentional interference with prospective economic

This is Fyk's CC, which is anything but a second bite at the Facebook apple as the Government's Motion to Dismiss wrongly surmises. *See* n. 5, *supra*. The Government's argument that Fyk's CC is devoid of factual allegations concerning the harm / injury suffered as a result of CDA unconstitutionality / legal untenableness (as applied for certain, but facially as well) is disingenuous (at best). *See, e.g.,* [D.E. 9] at 5 ("Nearly all of Plaintiff's 143-page complaint consists of what purports to be a legal argument that Section 230 is unconstitutional").[7, 8]

"Disingenuous (at best)" because, again, Fyk's professional life was relegated to shambles due to the unconstitutionality / legal untenableness of Section 230 (and associated resulting deprivation of rights ensured by the Constitution), and the CC more than adequately alleges such harm / injury. The Government, by operation of the CDA's enforcement mechanism and delegation to commercial actors who have not shown entitlement to "Good Samaritan" CDA immunity, prevented(s) Fyk from obtaining redress against Facebook by unconstitutionally immunizing Facebook's action(s). *See* n. 5, *supra*. Indeed, the CC incorporates (by way of Exhibit B, which is also incorporated fully herein by reference) four pages of discussion that was aimed at

---

advantage / relations, violation of California's unfair competition statute(s), civil extortion, fraud / intentional misrepresentation) that are the subject of separate proceedings.

[7] *See, also, e.g., id.* at 2 ("Plaintiff fails to offer a concise statement describing the violations of his [constitutional] rights"), *id.* at 6 ("Nowhere in his voluminous Complaint does Plaintiff ever articulate the specific legally protected interest that he believes Defendant infringed upon"); *id.* at 6-7 ("Plaintiff has not alleged any particularized, concrete injury in this case but rather bases his claim to standing on his proposition that Section 230's immunity provision for interactive computer services allowed Facebook to take some unspecified action against him and that this cost him a large sum of money"), and *et cetera*.

[8] Ironically / contradictorily, on the other hand, the Government contends that the CC is purportedly too detailed. *See* Mot. to Dismiss "Argument" § III (*Plaintiff's Compliant Does Not Comply With Rule 8*). Motion to Dismiss "Argument" Section III is mislabeled as Section II; *i.e.*, the "Argument" section of the Motion to Dismiss has two Section II.

standing (*e.g.*, harm);[9] *i.e.*, describing how / why Fyk got to this point in this Court.[10, 11]

The first paragraph of Exhibit B of the CC (Ex. 2 here) reads, in pertinent part, as follows: "It is important that this Court have some context as to the harms Fyk has suffered as a result (at the root) of the legal shortcomings of Section 230." Fyk's CC addresses that which needs to be addressed in the Article III vein, speaking to harms suffered by Fyk as a result of the "root" cause – "legal shortcomings of Section 230." Exhibit B (and, again, many of the CC's common allegations, *see* § B.1, *infra*) describes the harm / injury suffered by Fyk as a result of Facebook's taking advantage of the CDA's statutorily-conferred "Good Samaritan" protection from all civil liability, despite acting in its anti-competitive pecuniary interest (the antithesis of "Good Samaritan[ism]") without any governmental agency oversight. But for the unconstitutionality /

[9] The CC's common allegations (and causes of action) also adequately address the three Article III checkboxes, but Exhibit B of the CC is a big part of the CC's standing-related discussion. And it seems, based not only on what the Motion to Dismiss says but also on the tone of the Motion to Dismiss, that the Government did not read Exhibit B of the CC or, really, the CC (*see* Section B.1 of this Response, below).

[10] For ease of reference, Exhibit B of the CC [D.E. 2] is attached hereto as **Exhibit 2** and incorporated fully herein by reference.

[11] "When challenging a law as unconstitutional, the Non-Delegation / Major Questions Doctrine, Void-for-Vagueness Doctrine, Substantial Overbreadth Doctrine, Harmonious-Reading Canon, Irreconcilability Canon, Whole-Text Canon, Surplusage Canon, and the Absurdity Canon all apply to Fyk as well as all citizens. Although one does not need 'standing' per se to challenge the (un)constitutionality of Section 230, Fyk has 'standing' (predicated on direct harm suffered as a result of Section 230) to constitutionally challenge the CDA based on the violation of his specific liberties and the taking of his specific property without due process guaranteed by the Fifth Amendment and / or for violation of his free speech guaranteed by the First Amendment – the Facebook Lawsuit and related Section 230 immunity misapplication." [D.E 2] at ¶ 6. *See also, e.g., Florida Prepaid Postsecondary Ed. Expense Bd. v. College Savings Bank*, 527 U.S. 627, 642-643 (1999) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis deleted)) ("'[I]n … due process claims, the deprivation by state action of a constitutionally protected interest … is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law'"); *id.* at 643 ("… only where the State provides no remedy, or only inadequate remedies, to injured [parties] for its infringement of their [property] could a deprivation of property without due process result"). More on "one does not need 'standing' per se to challenge the (un)constitutionality of Section 230" below. *See, e.g.,* § B.4, *infra.*

legal untenableness of the CDA (*e.g.*, contravention of the Non-Delegation / Major Questions doctrine(s)), Facebook would have faced potential civil liability, instead of Fyk being dismissed at the pleading stage without any hearing or opportunity to proffer evidentiary support for his Complaint.

For purposes of the instant motion practice, the *possibility* that Fyk's "interpretation of the scope of [Section 230] ultimately may be found to be incorrect does not deprive [him] of standing to challenge [its] constitutionality." *ApolloMedia Corporation v. Reno*, 19 F. Supp. 2d 1081, 1087 (N.D. Cal. 1998) (citing *Fordyce v. City of Seattle,* 55 F.3d 436, 440 (9ᵗʰ Cir.1995)). Fyk "has invoked the Declaratory Judgment Act in the instant action, seeking a declaratory judgment that [Section 230] is unconstitutional, facially and as applied." *Id.* In this declaratory pleading, Fyk "must demonstrate an independent basis of federal jurisdiction over the case. … There is no question here that this Court possesses an independent basis for federal jurisdiction in the instant action, since [Fyk] attacks the constitutionality of a federal statute. *See* 28 U.S.C. § 1331." *Id.* at 1087-1088. And the allegations of the CC invoke Section 1331. *See* [D.E. 2] at ¶ 9 ("This Court possesses original jurisdiction pursuant to Title 28, United States Code, Section 1331, as the action 'arises under the Constitution, laws, or treatises of the United States'").

As discussed in greater detail below, the CC invokes Article III and the Rule 12(b)(1) facet of the Government's Motion to Dismiss (and the Rule 12(b)(6) facet of the Government's Motion to Dismiss, regurgitating Rule 12(b)(1) traceability / causal connection arguments) is accordingly due to be denied. Section 230 (perhaps not the law originally envisioned and written by Congress, but as currently bastardized by commercial actors) harmed Fyk. The Government was solely responsible for enacting Section 230 in 1996.[12] The Government was / is solely responsible for the

---

[12] *See* n. 3, *supra*.

oversight and / or enforcement of Section 230 over the last twenty-six-plus years, but the CC

alleges that the Government wrongly abdicated the responsibility to enforce the Legislative will

of the Congress. The Government was / is solely responsible for enacting and "enforcing" the CDA

in a constitutionally and / or legally sound fashion – the Government has consistently failed Fyk

(and many others) in this regard during the CDA's twenty-six-plus-year lifespan. The CC presents

Fyk's request for redress in this action:

> This Court has the ability to strike down laws on the grounds that they are
> unconstitutional, a power reserved to the courts through judicial review. *See
> Marbury v. Madison*, 5 U.S. 137, 177 (1803) ("[i]t is emphatically the province and
> duty of the judicial department to say what the law is"). And this is precisely the
> declaratory judgment Fyk respectfully requests from this Court here – striking
> aspects of the CDA as unconstitutional. Alternatively, the Court has the ability to
> rein in Section 230 by narrowly conforming the application of Section 230
> consistent with the legislative intent, constitutional tenets / mandates, and / or the
> CDA's actual language. In this case, Fyk challenges the inconsistent judicial
> construction of the limits of online providers' Section 230(c) immunity. Fyk seeks
> a declaration that the CDA's immunity should be struck consistent with the
> Constitution or, alternatively, if judicial interpretation by the Court can cure the
> deficiencies of CDA immunity, the alternative declaration that Fyk seeks is this
> Court's clarification of the proper scope of [*i.e.*, constitutional application of]
> Section 230(c) immunity. [Footnote: At present, there is no limit to Big Tech's
> CDA immunization; and, worse, the judicial construction of immunity limits varies
> tremendously from one jurisdiction to another, making the CDA's application and
> effect extremely inconsistent and arbitrary despite the Internet not recognizing
> geographic bounds]. *See, e.g.,* ¶ 329(a)-(d) and n. 107, *infra*.

[D.E. 2] at ¶ 4.[13]

---

[13] As a general rule, the Court, in this CC would (first) examine whether there is any way the CDA
could be applied (up against Fyk's facial and as-applied challenges) in a constitutionally / legally
sound fashion to Fyk, such as perhaps through a limiting construction or partial invalidation. *See,
e.g., County Court of Ulster County, NY v. Allen*, 442 U.S. 140 (1979); *Broadrick v. Oklahoma*,
413 U.S. 601 (1973); *USA v. Ramos*, 695 F.3d 1035 (10th Cir. 2012). *See also, e.g., Jones v. United
States*, 526 U.S. 227, 239 (1999) (quoting *United States ex rel. Attorney General v. Delaware &
Hudson Co.*, 213 U.S. 366, 408 (1909)) ("'[W]here a statute is susceptible of two constructions,
by one of which grave and doubtful constitutional questions arise and by the other of which such
questions are avoided, our duty is to adopt the latter'"); *Monterey v. Del Monte Dunes at Monterey*,
Ltd., 526 U.S. 687, 707 (1999) (quoting *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S.
340, 345 (1998), and *Tull v. United States*, 481 U.S. 412, 417, n.3 (1987)) ("'[W]e must 'first
ascertain whether a construction of the statute is fairly possible by which the [constitutional]

The Rule 12(b)(6) facet of the Motion to Dismiss fares no better than the Rule 12(b)(1) facet. As discussed in greater detail below, the Rule 12(b)(6) portion of the Motion to Dismiss argues the same purported lack of traceability / causal connection as the Rule 12(b)(1) portion of the Motion to Dismiss. The Rule 12(b)(6) portion of the Motion to Dismiss fails for the same reasons the Motion to Dismiss fails on Rule 12(b)(1) grounds, which is, again and in sum, the Government was solely responsible for enacting Section 230 and the Government was / is solely responsible for the enforcement / oversight of Section 230 in a constitutionally and / or legally sound fashion; *i.e.*, there is most certainly traceability / causal connection in the 12(b)(6) setting just as in the 12(b)(1) setting.

Finally, the Government's Motion to Dismiss argues that the CC says too much in violation of Rule 8 (simply and nakedly because the Government just thinks the CC is long), warranting striking under Rule 12(f). The typical defense argument is that a complaint says too little under *Twombly*. And, yet, now, the Motion to Dismiss argues that Fyk has said too much. And the Motion to Dismiss does not progress to any secondary analysis – that the Government is confused by what

---

question may be avoided'''); *Department of Commerce v. United States House of Representatives*, 525 U.S. 316, 344 (1999) (quoting *Ashwander v. TVA*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)) ("'[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter'"); Greater New Orleans Broadcasting Assn., Inc. v. United States, 527 U.S. 173, 184 (1999) ("It is … an established part of our constitutional jurisprudence that we do not ordinarily reach out to make novel or unnecessarily broad pronouncements on constitutional issues when a case can be fully resolved on a narrower ground"). Per this CC cite, the CC indeed recognizes that the Court could / should try to find a way to articulate the ins-and-outs of the CDA in a way that renders such fully constitutional / legally tenable; but, given the several ways in which the CDA falls short is constitutionally / legally flawed, we are doubtful as to the Court's prospects in that regard (*i.e.*, doubtful that even an appropriate limiting construction and / or partial invalidation here or there within the CDA would be able to cure all of the several ways in which the CC is constitutionally and / or legally defective). *See* [D.E. 2] at ¶ 25. In the end, we see no legitimate outcome other than the fatally flawed (in myriad respects) CDA being struck down.

is written in the CC because of how much is written in the CC, and so confused that the Government cannot formulate a substantive response to CC averments. It is disingenuous for the Government (Section III of the Motion to Dismiss) to contend that it is somehow confused as to what is at issue in the CC, especially considering the Government did not use its last-minute conferral on the topic to elucidate despite invitations for such. *See* Ex. 1.[14]

The Government here, like defendant Facebook in the case that Fyk filed in California's Northern District Court, seeks to terminate this action at the pleading stage (*i.e.*, wishes for the Court to prematurely, summarily snuff out a merits-based resolution; *i.e.*, join the California court system in depriving Fyk of due process). For the reasons above and below, the Government's Motion to Dismiss must be denied.

## MEMORANDUM OF LAW

### A.    *Legal Standard*

As to Rule 12 motions to dismiss, courts are to "accept the allegations in the Complaint as true, construing them in a light most favorable to the plaintiff. … Motions to dismiss are only granted 'when the movant demonstrates beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"   *Young v. Fleming*, 146 Fed.Appx. 393, 394-395 (11th Cir. 2005) (internal citations omitted); *Meeks v. Murphy Auto Group, Inc.*, No. 8:09-cv-1050-T-TBM, 2009 WL 3669638 at *3 (M.D. Fla. Oct. 30, 2009) (motion to dismiss "tests the legal sufficiency of a Complaint"); *Asa Accugrade, Inc. v. Am. Numismatic Ass'n*, No. 6:05-cv-1285-Orl-19DAB, 2006 WL 1640698 at *5 (M.D. Fla. June 9, 2006) (trial court "is … limited to

---

[14] "Last-minute" because, as one can see from Exhibit 1, the Government waited until late in the afternoon the day before its enlarged CC response deadline (after having sat on the CC for roughly ninety days leading up to "conferral") to open a "dialogue" with undersigned counsel on the subject of the CC supposedly saying too much and supposedly confusing the Government into a supposed inability to respond.

examining the four corners of the Complaint" as to defendant's "very high burden" (internal citations omitted)).

> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'  While a Complaint attacked by a … motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do … . Factual allegations must be enough to raise a right to relief above the speculative level, … on the assumption that all the allegations in the Complaint are true (even if doubtful …).

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A high bar must be cleared for dismissal, depriving the plaintiff of its day in court – dismissal is the ultimate sanction reserved for aggravating circumstances. Yet, here, in Fyk's case, and all of those similarly situated, Fyk never had an opportunity to either defend his Complaint in a hearing or make a proffer as to the factual and evidentiary support he could have produced to surmount an attack on the pleadings alone.

**B.    *Fyk Has Article III Standing***

 "The plaintiff must demonstrate, at an 'irreducible constitutional minimum,' that (1) he personally suffered a 'concrete and particularized' injury in fact (2) which is 'fairly traceable to the challenged action of the defendant' and (3) 'likely, as opposed to merely speculative, to be redressed by a favorable decision.'" *Navegar, Inc. v. United States of America*, 914 F. Supp. 632, 635 (D.D.C. 1996). Specific CC allegations regarding monetary and / or constitutional harm suffered by Fyk as a result of the CDA are cited in Section B.1 below and Exhibit B of the CC (Exhibit 2 here). Fyk unquestionably "has standing to challenge the constitutionality of a statute [here, the CDA] only insofar as it has an adverse impact on his own rights." *United States of*

*America v. Ramos*, 695 F.3d 1035, 1047 (10th Cir. 2012) (citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 154-155 (1979)).

1. **Harm / Injury – Facebook, Acting Under The Aegis Of Government And / Or The Government's Constitutionally / Legally Flawed CDA, Destroyed Fyk's Livelihood**

Harms (for Article III standing analysis, not dispositive analysis akin to summary judgment) suffered by Fyk because Section 230's brokenness (unconstitutionality / legal untenableness) allowed Facebook to run roughshod over Fyk (and all those similarly-situated and discriminated commercial users of the ISP) included, but were not limited to, the following:

- Facebook, resting easy amidst "sovereign immunity" created by CDA unconstitutionality / legal untenableness (*i.e.*, knowing full well that CDA unconstitutionality / legal untenableness promoted a reality wherein Facebook could never do any wrong despite doing a whole lot of wrong), created a "workplace" (the platform / modern public square that is Facebook) for folks to build their professional lives on until Facebook, overnight, felt that it could augment corporate profit through various measure that completely pulled the rug out from underneath such folks in anti-competitive fashion (because of the pull-the-rug-out-from-underneath insulation that was / is "sovereign immunity" created by CDA unconstitutionality / legal untenableness): "Fyk's large Facebook presence resulted in his pages becoming income generating business ventures, generating hundreds of thousands of dollars a month in advertising and lead generating activities, which such value was derived from Fyk's high-volume fan base distribution," [D.E. 2], Ex. B at ¶ 2.

- "Between 2010 and 2016, Facebook implemented an 'optional' paid for reach program. Facebook began selling distribution, which it had previously offered for free and, in so, became a direct competitor of users like Fyk. This advertising business model created a

11

misalignment of interests between [Facebook] and people who use Facebook's services, ... which incentivized(s) Facebook to selectively and tortiously interfere with users' ability to monetize by removing content from non-paying / low-paying users in favor of higher paying higher quality participants in the ecosystem," *id.* at ¶ 3 (internal quotations omitted). And why did Facebook have no worries about implementing a sham program called "optional paid for reach"? Because of complete insulation flowing from the broken / unconstitutional CDA. Ordinarily, sham programs like that result in civil liability (or at least civil liability exposure) along the lines of fraud and / or civil theft and / or extortion and / or the like, which were among causes of action advanced by Fyk in federal court (Northern District of California). But not with Big Tech, not with *carte blanche* "sovereign immunity" created by the unconstitutionality / legal untenableness of the CDA.

- Facebook, emboldened by its "sovereign immunity" created by CDA unconstitutionality / legal untenableness reduced the reach / distribution / availability of Fyk's pages / businesses by over 99% overnight. *See id.* at ¶ 4. Then, in October 2016, Facebook fully de-activated several of Fyk's pages / businesses, totaling over 14,000,000 fans cumulatively, under the fraudulent aegis of "content policing" pursuant to Section 230(c)(2)(a). *See id*. Facebook's content policing, however, was not uniformly applied or enforced as a result of Facebook's insatiable thirst for financial gain. *See id.*

- "Regulation, penalization, or deprivation in any form, carried out by an authorized government agent (*i.e.,* whether private or public) "to fill up the details" (*i.e.,* fill in the quasi-legislative rules) at the directive of Congress, must afford due process and free speech of the entity or person being policed / regulated. Fyk challenges the constitutionality of Section 230, with the law (currently being wielded by large technology companies,

cloaked as delegated state actors; *i.e.,* proxy agents), to deprive constitutionally protected rights, such as due process and free speech, *via* illegal conduct being glaringly violative of the multitude of constitutional doctrines and / or canons of statutory construction discussed throughout this filing." [D.E. 2] at ¶ 14.

- "In *Malwarebytes*, Justice Thomas aptly stated (all of Justice Thomas' *Malwarebytes* statements were / are apt), in part: 'courts have extended the immunity in §230 far beyond *anything that plausibly could have been intended by Congress*… Courts have also departed from the most natural reading of the text by giving Internet companies immunity for their own content [*i.e.*, creation and development in part by proxy]… . Courts have long emphasized nontextual arguments when interpreting §230 [*i.e.*, proof-texting], *leaving questionable precedent in their wake*.'" *Id.* at ¶ 18 ((citing to *Malwarebytes*, 141 S.Ct. at 13-15 (emphasis added, internal citations omitted)). Here, a Supreme Court Justice is recognizing that CDA immunity has been taken way too far to the detriment of Fyk and others.

- "California courts (including in the Facebook Lawsuit; again, so far, at least) have consistently failed to address and / or embrace the most natural reading of the CDA's text by giving Internet companies immunity for their own content and / or conduct, which would otherwise be unlawful. Although Justice Thomas welcomed an "appropriate case," *see* Ex. C, *Malwarebytes*, 141 S.Ct. at 14 ('in an appropriate case, we should consider whether the text of this increasingly important statute aligns with the current state of immunity enjoyed by Internet platforms') and Ex. C, *Doe*, 2022 WL 660628 at *2 ('Assuming Congress does not step in to clarify § 230's scope, we should do so in an appropriate case'), the Supreme Court of the United States ('SCOTUS') denied Fyk's

Petition for Writ of Certiorari in the Facebook Lawsuit, which addressed (to some degree or another) some of the constitutional doctrines and / or canons of statutory construction at play here. [Footnote:  Congress has not reformed Section 230 in the twenty-six-year existence of the law because, we submit, there is no realistic and comprehensive way to fix Section 230 shy of a complete overhaul; hence, this constitutional challenge is appropriate and necessary]." *Id.* at ¶ 21.

- "The new 'laws' created by large technology companies 'govern[ ] the lives of [millions of] Americans [and must be] subject to the robust democratic processes the Constitution demand,' like due process and free speech. Anybody sane recognizes that the 'laws' created by large tech companies do anything but ensure constitutional freedoms." *Id.* at ¶ 36.

- "Section 230's overly broad misinterpretation / misapplication is an abomination that has afforded private corporations the unlimited authority to, for examples, eliminate their competition, dispose of critical thinking, and grant self-interested individuals / companies the ability to conduct (*i.e.*, under 'color' of law) the largest modern-day book burning in the history of mankind. Section 230's vague, overly broad 'sovereign' immunization of Big Tech's unlawful conduct results in a deep chilling effect on all lawful / permissible speech online and is an all-out assault on citizens' due process rights. [Footnote: More real-world examples of the havoc Section 230 is wreaking with its *carte blanche* 'sovereign' immunity are provided throughout this challenge, in particularly in the below 'Overbreadth' section where real-world harms caused by the broken application of the CDA have to be shown]." *Id.* at ¶ 53.

- "The Fifth Amendment says to the federal government that no one shall be 'deprived of life, liberty or property without due process of law' [ ]… the Internet should not continue

to be the exception. Fyk was personally denied due process by the California courts … ,
and the SCOTUS to a lesser degree, when a government authorized and purportedly fully
immunized 'proxy agent' (Facebook), voluntarily taking action under the aegis of
government (Section 230), deprived Fyk (which amounts to a government taking) of his
liberty and property without so much as a single hearing on the matter. Again, this being
at issue in the Facebook Lawsuit." *Id.* at ¶ 54.

- Section 230, in its current unchecked state, confers *carte blanche* immunity to all online
  providers, even from unlawful or tortious conduct.[ ] 'According to the restrictive theory,
  'the immunity of the sovereign is recognized with regard to sovereign or public acts of a
  state, but not with respect to private acts.'' [ ] In other words, a state should enjoy immunity
  from suits arising out of the exercise of their governmental functions (*i.e.*, to block and
  screen offensive material), but not from suits arising out of the types of activities in which
  private parties engage (*i.e.*, entirely 'voluntary' private acts, devoid of obligation or
  consideration). In contradiction to the restrictive theory (*i.e.*, 'which excludes immunity
  for private acts such as commercial activities'), Section 230 allows both private function
  and governmental function, simultaneously. In *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096 (9th
  Cir. 2009), the Ninth Circuit Court determined that, 'any activity that can be boiled down
  to deciding whether to exclude material that third parties seek to post online is perforce
  immune under section 230.' *Id.* at 1102 (internal citation omitted). If the Ninth Circuit
  Court was correct (it was not correct in *Barnes*), that would also include unlawful behavior
  such as antitrust and / or anti-competitive action, which has been the aberrant conclusion
  (thus far) in the Facebook Lawsuit. All agency actions (especially private acts) cannot
  logically or legally be immune from suit. While the Ninth Circuit Court has been right on

occasion (*e.g.*, *Fair Housing,* and *Enigma*, and *Lemmon v. Snap, Inc.*, 440 F. Supp. 3d 1103 (C.D. Cal. 2020)), the Ninth Circuit Court has also missed the mark on other occasions (*e.g.*, *Barnes*, *Sikhs for Justice*, *Inc. v. Facebook, Inc.*, 697 Fed.Appx. 526 (9th Cir. 2017), the Facebook Lawsuit), leaving the CDA in a case law gray zone / no man's land in addition to the CDA's constitutionally broken condition." *Id.* at ¶ 58.

- "The CDA's constitutional / statutory flaws, as discussed in detail greater below (doctrines in Section C and canons in Section D), result in the deprivation of constitutionally guaranteed rights (due process under the Fifth Amendment almost always, and free speech under the First Amendment quite often). As discussed above, the CDA's numerous constitutional / statutory flaws deprived Fyk of his Fifth Amendment and First Amendment rights, resulting in the economic / livelihood destruction of Fyk, all as illustrated by the Facebook Lawsuit. Moreover, because CDA-oriented actions are taking place without any transparency, and are being performed by commercial actors, the CDA has a pernicious effect of allowing private factions to 'police' and censor public participation, expression, and speech without any check on online providers' plenary power. For these reasons, this Court should scrutinize the constitutionality of the CDA." *Id.* at ¶ 62.

- "Congressional delegation of the authority to an ICS (a commercial enterprise) that operates without transparency or the safeguards of agency oversight, undertook an intolerable and unconstitutional interference with Fyk's personal liberty and private property. Fyk lost hundreds of millions of dollars without due process when Facebook, Fyk's competitor, acting under the color of 'congressional CDA authority,' stripped Fyk of his livelihood. *See* the Facebook Lawsuit." *Id.* at ¶ 84.

- "Section 230 has no measurable bounds, is not 'enforced' uniformly, and is often

'enforced' to the benefit of the online provider / ICS rather than 'in the interests of the public.' In the Facebook Lawsuit, Fyk has thus far been denied all measure of redress (*i.e.,* denied due process, and denied free speech for that matter) when Facebook took agency action (illegitimately protected by government) against Fyk. This unlawful regulatory taking action (undertaken by an agent of government – Facebook) has thus far been afforded 'who cares?' status by the courts presiding over the Facebook Lawsuit, amounting to a deprivation of Fyk's due process rights even though Fyk's Verified Complaint in the Northern District of California Court specifically alleges anti-competitive animus / motives for Facebook's actions." *Id.* at ¶ 102.

- "Section 230 is an inescapably extreme example of why the Non-Delegation Doctrine and Major Questions Doctrine exist. Congressional authority, to assist in the legislative function, may be delegated to an 'official body, presumptively disinterested;' but, regulatory authority delegated to private entities motivated by self-interest is 'legislative delegation in its most obnoxious form.' Section 230 is an unconstitutional delegation of regulatory authority, that is 'so clearly arbitrary, and so clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment.' Section 230's constitutional infirmities must be immediately addressed and remedied by this Court, lest continued irreparable permanent harm to the constitutional rights of all Americans (like Fyk) and to the Constitution of the United States of America continue." *Id.* at ¶ 103.

- "Third-party participants have no process by which to challenge (in a court of law) a corporation's unlawful, anti-competitive decisions because Section 230 has ridiculously morphed into absolute immunity from suit. In the Facebook Lawsuit, Facebook unlawfully restricted Fyk's permissible speech by way of the government's delegation of the major

question that is free speech. Section 230 did not 'protect' either the ICS' or Fyk's First Amendment rights; rather, by dismissing Fyk's claims, the courts protected Facebook from civil liability and infringed upon Fyk's rights to seek redress and speak freely. There is a distinct difference between the government's liability 'protection' of the ICS and the government's authorization (*i.e.,* to a private agent) to infringe on a third-party's constitutionally protected rights. Simply put, the government cannot fuel an ICS' deprivation of an ICP's free speech rights, which is precisely what the CDA fosters in a far too overbroad way." *Id.* at ¶ 134.[15]

- "In its current state (some of it having to do with on its face, some of it having to do with as applied, some of it having to do with statutory construction, and some of it having to do with judicial misinterpretation, as demonstrated above), the CDA strips United States citizens of their constitutionally protected First Amendment and Fifth Amendment rights (case in point being the Facebook Lawsuit, primarily implicating deprivation of Fyk's Fifth Amendment rights, but also implicating his First Amendment rights). That untenable end result comes from the CDA being so badly broken in myriad ways (*e.g.,* vague, misunderstood, misapplied, overbreadth, and unconstitutional, *et cetera*). Section 230, on its face and / or as applied, violates the Non-Delegation Doctrine / Major Questions Doctrine, Void-for-Vagueness Doctrine, Substantial Overbreadth Doctrine, Harmonious-Reading Canon, Irreconcilability Canon, Whole-Text Canon, Surplusage, and Absurdity Canon. Under any of these legal tenets (again, with the end result being the deprivation of constitutionally guaranteed rights), and whether considered separately or together, the

---

[15] Regarding deprivation of judicial review: "To be sure, a statute that totally precluded judicial review for constitutional claims would clearly raise serious due process concerns." *American Coalition for Competitive Trade v. Clinton*, 128 F.3d 761, 765 (D.D.C. 1997).

CDA is unconstitutional and / or legally untenable and is due to be struck. And this is precisely the declaratory judgment that Fyk respectfully requests from this Court here – striking all of the CDA as unconstitutional and / or legally untenable (in the primary) or striking a portion of the CDA as unconstitutional (in the alternative)." *Id.* at ¶ 328.

The list could go on … and on … and on; *i.e.*, this list is illustrative, not exhaustive. It is inconceivable that the CC could have alleged any more as to harm / injury. The Motion to Dismiss' Article III argument revolves primarily around supposed lack of harm / injury allegations – the Motion to Dismiss could not be further off-the-mark.

### 2. Traceability / Causal Connection – It Is The Government (And The Government Alone) Who Passed Section 230 And "Enforced" The Broken CDA Unchecked For Twenty-Six-Plus-Years [16]

Once more: (a) the Government enacted the CDA; and (b) the Government is tasked with enforcing the CDA. There is nobody else responsible for the CDA and its unconstitutionality / legal untenableness. There is nobody else who must answer for the harms (to Fyk and countless others) flowing from such unconstitutionality / legal untenableness. It is just the Government. The Government failed miserably with the law (CDA) for the many reasons spelled out in the CC – the CDA, at minimum, violates (facially and as applied) "the Non-Delegation / Major Questions, Void-for-Vagueness, and Substantial Overbreadth Doctrines. Section 230 also violates the Harmonious-Reading, Irreconcilability, Whole-Text, Surplusage, and Absurdity Canons of statutory construction." [D.E. 102] at ¶ 3. The Government has failed miserably in enforcing the CDA, going so far as to sit idle amidst agency delegation to Big Tech. *See id., e.g.*,

---

[16] This section of this Response is written in the Rule 12(b)(1) sense, but also applies to the Motion to Dismiss' Rule 12(b)(6) argument. *See* n. 2, *supra*. We did not think it necessary to regurgitate this section in relation to Rule 12(b)(6); hence, this section also constitutes Fyk's response to the Government's 12(b)(6) argument.

at ¶¶ 12-13, 14-15, 27, 52, 56, 60-61, 66-67, 70, 73, 75, 78, 84-86, 90, 95, 101, 103, 113, 134, 174, 312.[17] "Sit idle" because the Government cannot be so blind as to have failed to have seen how badly Big Tech (the Government's enforcer) has manipulated the CDA in crushing the little guy for over two decades; and, if the Government is audacious enough to claim blindness, well, the CC has now given the Government optics (in more than adequately giving the Government notice, discussed below in rebutting the Motion to Dismiss' "shotgun" / Rule 8 argument).

### 3. Redressability – Fyk's Situation Can Be Remedied By The Court's Fixing Or Repudiating Section 230

Fyk thus far has been deprived of redressability (in a commercial, civil setting)[18] with respect to the illegalities inflicted upon him by Facebook because the CDA has empowered private commercial industry giants to "police" themselves so as to have enabled non-governmental actors to wield unconstitutionally delegated powers to their advantage for decades against individuals (Fyk) without any fear of consequence / redressability. And, so, redress has been limited to addressing the law itself. Indeed, it is often best to stop weeds (Big Tech) from taking over the garden (Fyk and the rest of the Internet world) by nipping the weeds at their roots (the CDA).

---

[17] "Furthermore, a private entity (who has received delegated authority from Congress) is not required to adhere to the Administrative Procedure Act ('APA'), a federal act that is codified as Title 5, United States Code, Sections 551-559 and governs the procedures of administrative law. Section 3 of the APA addresses the procedural formalities that agencies must employ when making decisions. There is a distinction made between (a) general regulations made through the process of rulemaking, and (b) case-by-case decisions made through the process of adjudication. Section 10 of the APA deals with judicial review of administrative agency decisions. Reviewing courts determine whether agency officials acted in compliance with relevant federal statutes and whether the agency's actions were 'arbitrary, capricious, or an abuse of discretion.'" [D.E. 2] at ¶ 101. "The Administrative Procedure Act, which governs the proceedings of administrative agencies and related judicial review, establishes a scheme of 'reasoned decisionmaking.' Not only must an agency's decreed result be within the scope of its lawful authority, but the process by which it reaches that result must be logical and rational." *Allentown Mack Sales and Service, Inc. v. NLRB*, 522 U.S. 359, 374 (1998) (internal citation omitted).

[18] *See* n. 11, *supra* (deprivation of redressability is deprivation of due process).

Again, the poisonous / infected root (the CDA) was / is attributable to one source – the enactors of the CDA (1996), the Government. Which such enactors have (the Government has) done nothing since 1996 to stop the spread of the root's poison; *i.e.*, the Government has failed miserably in the past twenty-six-plus-years at enforcing the CDA, even going so far as to delegate enforcement of the CDA (without any sort of guidelines and / or oversight) to the weeds (Big Tech).

And, so, yes, Fyk's only redress is tackling the CDA with this Court right here, right now. After all, per at least *Marbury* and *Miranda*, it is the judicial system that is tasked with (or should not shy away from) sorting out laws, both with respect to interpretation and application. The redress Fyk seeks is plainly spelled out in the CC, for example (and again):

> This Court has the ability to strike down laws on the grounds that they are unconstitutional, a power reserved to the courts through judicial review. *See Marbury v. Madison*, 5 U.S. 137, 177 (1803) ('[i]t is emphatically the province and duty of the judicial department to say what the law is'). *And this is precisely the declaratory judgment Fyk respectfully requests from this Court here – striking aspects of the CDA as unconstitutional. Alternatively, the Court has the ability to rein in Section 230 by narrowly conforming the application of Section 230 consistent with the legislative intent, constitutional tenets / mandates, and / or the CDA's actual language.* In this case, Fyk challenges the inconsistent judicial construction of the limits of online providers' Section 230(c) immunity. [Footnote: The breadth of Section 230 immunity has been unchecked and expanded by courts (mainly courts within the Ninth Circuit, including the Ninth Circuit Court, where many social media companies have their principal place of business) over the last twenty-six years]. Fyk seeks a declaration that the CDA's immunity should be struck consistent with the Constitution or, alternatively, if judicial interpretation by the Court can cure the deficiencies of CDA immunity, the alternative declaration that Fyk seeks is this Court's clarification of the proper scope of Section 230(c) immunity. [Footnote: At present, there is no limit to Big Tech's CDA immunization; and, worse, the judicial construction of immunity limits varies tremendously from one jurisdiction to another, making the CDA's application and effect extremely inconsistent and arbitrary despite the Internet not recognizing geographic bounds]. *See, e.g.,* ¶ 329(a)-(d) and n. 107, *infra*.

[D.E. 2] at ¶ 4 (emphasis added); *see also, id.* at ¶ 329.[19]

---

[19] As to the possible "alternative" to striking down Section 230 (*i.e.*, as to the possibility of this Court's proffering a limiting instruction as to Section 230 interpretation / application and / or this

And the WHEREFORE clause of the CC succinctly pulls redress together as a WHEREFORE clause should:

> WHEREFORE, Plaintiff, Jason Fyk, respectfully requests that this Court declare and construe the CDA and enter declaratory judgment, as follows: declare the CDA unconstitutional, accordingly inoperative, and hereby struck. *See* ¶¶ 334-342, *supra*. [Footnote: Alternatively, *see* ¶¶ 4, 329-330 and 343, and n. 107, *supra*]. In conjunction with same, Fyk further respectfully requests (a) the Court's entry of declaratory judgment in his favor, for all declaratory and supplemental relief within the declaratory jurisdiction of this Court; (b) the Court's taxation of costs and / or award of reasonable attorneys' fees (ultimately) in favor of Fyk pursuant to Title 28, United States Code, Section 2412 or as otherwise taxable / awardable; and (c) the Court's awarding Fyk any other relief deemed equitable, just, or proper.[ ]

[D.E. 2] at 135.

We really do not know what else to say about redressability – if this action brought by this Plaintiff (who has suffered immense direct harm due to the CDA) against this Defendant (who enacted the CDA and has failed in enforcing same) in this Court (the jurisdiction of the Government and the highest Court in the land) is not the one in which the unconstitutionality / legal untenableness of the CDA can be addressed and redressed, then there is simply no action / courtroom in which the broken CDA can be addressed / redressed. Given that simply cannot be reality (*i.e.*, simply cannot be the fates of the CDA and Fyk), we submit that Article III's redressability prong has been satisfied (and, again, this is just the pleading stage where Fyk should be given the benefit of doubt if there was somehow any doubt; *i.e.*, this is not summary judgment or trial).

### 4. First Amendment "Lone Exception" To Article III Elements / Fyk Can Challenge The CDA For The Good Of Others

"As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third

---

Court's striking part of Section 230 as opposed to the whole), *see* n. 13, *supra*.

parties in hypothetical situations." *Allen* at 155. "A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment. This exception has been justified by the overriding interest in removing illegal deterrents to the exercise of the right of free speech." *Id.*

Fyk's CC is replete with allegations concerning deprivation of free speech protected by the First Amendment flowing from the CC's brokenness:

> 'A statute is overly broad if, in proscribing unprotected speech, it also proscribes protected speech. Because an overly broad law may deter constitutionally protected speech, the overbreadth doctrine allows a party to whom the law may constitutionally be applied to challenge the statute on the ground that it violates the First Amendment rights of others.' [Footnote: https://en.wikipedia.org/wiki/Overbreadth_doctrine (citing, *e.g.*, *Board of Trustees of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 483 (1989), and *R.A.V. v. City of St. Paul*, 505 U.S. 377 (1992)). … ]. Here, Section 230(c)(2)(A), for example, literally contains the following language: 'whether or not such material is constitutionally protected.' Here, Fyk challenges Section 230 on behalf of millions of Americans (*i.e.*, a substantial number) whose lawful, permissible speech has been unlawfully, unwillingly censored by private agents with ulterior motives (*e.g.*, monetarily driven competition) acting under the aegis of government, as a direct result of the overly broad draftsmanship of Section 230 and the overly broad application of Section 230 immunity.

at [D.E. 2] at ¶ 135; *see also, e.g., id.* at ¶¶ 2, 5-6, 62, 122, 125-127, 133-134, 140-143, 167-168, 171, 179, 184, 187, 191, 230, 241, 328, 332.

Many precise examples of the CDA resulting in deprivation of free speech in violation of the First Amendment (many of which such examples Fyk directly experienced at the hands of Facebook and that Big Tech company's using the CDA as a sword to cut down free speech, and such examples experienced by Fyk are set forth in the CC) are set forth in the CC. *See, e.g., id.* at ¶¶ 166-201.

Again, as discussed above:

A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no

> constitutional defect in the application of the statute to a litigant, he does not have standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations. A limited exception has been recognized for statutes that broadly prohibit speech protected by the First Amendment. This exception has been justified by the overriding interest in removing illegal deterrents to the exercise of the right of free speech.

*Allen* at 154-155 (citing to *Broadrick*). And, so, again, as stated above (*see* n. 11, *supra*), Fyk does not need *per se* Article III standing (*i.e.*, a direct "stake") in order to challenge the CDA (at least not on First Amendment grounds). As discussed above, Fyk certainly does have overall Article III standing, but, at the very least, Fyk would have the "limited exception" standing to pursue the CC even assuming *arguendo* he did not somehow check off the harm, traceability, and redressability Article III boxes.

**C.      The Constitutional Challenge Is Anything But Confusing "Shotgunning"**

The Motion to Dismiss argues that the CC says too much, including argument and redundant allegations, in violation of Rule 8 and worthy of Rule 12(f) striking. Had Fyk said less, the Government would have surely gone the other route – argued that the CC did not meet the heightened pleading standards of *Twombly*. Ever since *Twombly*, "short and plain" does not cut it from a plaintiff's perspective.

"The unifying characteristic of all types of shotgun pleadings is that they fail to ... give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Yeyille v. Miami Dade County Public Schools*, 643 Fed.Appx. 882, 884 (11th Cir. 2016) (internal citation omitted). No such circumstance exists here. Here, the CC (although, yes, lengthy because it had to be, as discussed further below) is plain – Section 230 runs afoul of numerous constitutional doctrines and / or canons of statutory construction. *See* [D.E. 2] at ¶ 3 ("Section 230, on its face and / or as applied,[ ] violates the Non-Delegation / Major Questions, Void-for-Vagueness, and Substantial Overbreadth Doctrines. Section 230 also violates the Harmonious-

Reading, Irreconcilability, Whole-Text, Surplusage, and Absurdity Canons of statutory construction").

Indeed, there is no way the CC could be shorter. "In determining whether a statute's overbreadth is substantial, the courts consider a statute's application to real-world conduct, not fanciful hypotheticals. *See, e.g.*, *U.S. v. Williams*, 553 U.S. 285, 301–302 (2008). Accordingly, the courts have repeatedly emphasized that an overbreadth claimant bears the burden of demonstrating, "from the text of [the law] and from actual fact that substantial overbreadth exists." *See, e.g.*, *Virginia v. Hicks*, 539 U.S. 113, 122 (2003) (internal citation omitted)." [D.E. 2] at ¶ 172. *See also Broadrick* (wherein the Supreme Court of the United States made abundantly clear that an "overbreadth" challenge was / is a "substantial overbreadth" challenge; *i.e.*, that the challenged overbreadth needs to be *demonstrably* significant in order for a facial overbreadth constitutional challenge to succeed). So, here, unless the Government would like to stipulate as to substantiality, the Substantial Overbreadth section of the CC, *see* [D.E. 2] at 45-102 (¶¶ 121-260), *see also* ¶¶ 39, 49, 51, was *legally required* (at least so says at least three SCOTUS decisions – *Williams, Hicks,* and *Broadrick*) to be as detailed (and, thus, as long) as it is. And, here, the Substantial Overbreadth section of the CC constitutes roughly 42% of the length of the CC. So, it is not that Fyk just wanted to willy-nilly say a lot as the "shotgun" / Rule 8 section of the Motion to Dismiss argues; rather, it is that Fyk legally had to *substantially* allege overbreadth with "real-world conduct, not fanciful hypotheticals." Again, at least so says at least three SCOTUS decisions – *Williams, Hicks,* and *Broadrick*. Again, the Substantial Overbreadth section of the CC constitutes approximately 42% of the length of the CC.

Conversely, the CC was as succinct as it could be where it was allowed to be succinct. Take, for example, the Major Questions Doctrine. As for the Major Questions Doctrine,

elaborating beyond that which is said in the CC's "Preliminary Statement" was not necessary; *i.e.*,

as it pertained to the application of the Major Questions Doctrine, Paragraphs 31-49 of the CC said

all that needed to be said and those averments were accordingly incorporated fully into Section C

of the CC by reference. Fyk was acutely aware of length and did not expand when not necessary,

and the CC literally stated as much. *See* [D.E. 2] at n. 10 ("The idea of this 'Preliminary Statement'

is to give the Court a good enough feel for this constitutional challenge before having to deep dive

into this matter by way of reading the vast detail that follows this 'Preliminary Statement.'

Although what follows the 'Preliminary Statement' section of this filing is admittedly lengthy, it

was / is necessary to not short-shrift since the proper scope of CDA immunity is extraordinarily

important and generally misunderstood").

> Moreover, the CDA has rarely, if ever been assessed by a court as a whole.
>
> The text of Section 230 has rarely (if ever, other than perhaps Justice Thomas'
> *Malwarebytes* and *Doe* Statements, *see* Ex. C) been considered as a whole,
> implicating the Whole-Text Canon generally. The CDA's individual provisions
> have been interpreted in isolated ways (all six ways to Sunday, with hardly any
> rhyme or reason, over the last twenty-six years) that are absurd (Absurdity Canon),
> duplicative (Surplusage Canon), and certainly not compatible with the rest of the
> statute (Harmonious-Reading Canon / Irreconcilability Canon).[ ] This has
> accordingly led to contradicting (and irreconcilable) court decisions, such as the
> polar opposite (even if just viewed through the anti-competitive animus lens) paths
> / fates of the Facebook Lawsuit and *Enigma*. It is well-past time for a declaration
> as to the CDA's unviability leading to so many conflicting decisions, associated
> legal chaos, and associated inconsistent case results ((in)justices) over more than
> two and a half decades; hence, this challenge.

[D.E. 2] at ¶ 269. This despite constitutional challenges being highly uninformed (if not

inappropriate) if the entire statute is not examined as a whole (which such incomplete examination

of the CDA has been one of the many wrongs inflicted by the California court system on Fyk). *See*

*id., e.g.,* at ¶¶ 22, 24-25, 142.[20] Meaning, again, Fyk had no choice other than to be comprehensive

---

[20] "Statutory language must be read in context and a phrase 'gathers meaning from the words

with his CC, and twenty-six-plus-years of messed up case law[21] and myriad constitutional doctrines and statutory doctrines at play was simply not capable of a short (and, thus, short-shrift) write-up.

In sum, there is nothing about the CC that does not, as a true "shotgun" pleading would, fail to "give [the Government] adequate notice of the claims against [it] and the grounds upon which each claim rests." The CC adequately puts the Government on notice that Section 230 is constitutionally / legally amiss, is harming citizens like Fyk (even depriving constitutionally protected First Amendment and Fifth Amendment rights in the process, as with Fyk) as a result, and can no longer be left unchecked / unbridled.

The Motion to Dismiss does not even give an example of the supposed "shotgunning" at play, notwithstanding Fyk's invitation for the Government to so elucidate / exemplify. *See* Ex. 1. Rather, the Motion to Dismiss nakedly states that the CC is long and accordingly must violate Rule 8. Really? This is by no means "shotgunning;" again, "shotgunning" leaves the reader unclear as to something (*i.e.*, not on notice of alleged wrongdoing … Rule 8 revolves around adequate notice).

> Under Federal Rule of Civil Procedure 12(f), the district court may strike from a pleading 'any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.' See Fed. R. Civ. P. 12(f). 'Striking allegations from a pleading, however, 'is a drastic remedy to be resorted to only when required for the purposes of justice' and only when the stricken allegations have 'no possible relation to the controversy.'' *Badilo v. City of Deerfield Beach*, No. 13-60057-CIV, 2013 WL 3762338, at *1 (S.D. Fla. July 16, 2013) (Rosenbaum, J.) (quoting *Augustus v. Bd. of Pub. Instruction of Escambia Cnty., Fla.*, 306 F.2d 862, 868 (5th Cir. 1962)). Thus, a motion to strike 'will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.' *Seibel v. Society Lease, Inc.*, 969 F. Supp. 713, 714 (M.D. Fla. 1997).

---

around it.'" *Jones v. United States*, 527 U.S. 373, 389 (1999) (quoting *Jarecki v. G.D. Searle & Co.*, 367 U.S. 303, 307 (1961)).

[21] "Courts have long emphasized nontextual arguments when interpreting § 230, leaving questionable precedent in their wake." *Malwarebytes, Inc. v. Enigma Software Group USA, LLC*, 141 S.Ct. 13, 14 (2020).

*Mordechaev v. Jet Ski Exotics, LLC*, No. 16-23867-Civ-Scola, 2017 WL 7794296 at *2 (S.D. Fla. Jun. 2, 2017). The preceding case makes clear that striking averments is a very rare process given the harshness of same.

Section III of the Motion to Dismiss is filled with legal citation as to purported "shotgunning." The Government does not then go on to say how it is that it cannot understand what is written in the CC (*i.e.*, how it is that it is not on notice of what is at issue) due to the CC's length. Again, a defendant possessing adequate notice of what is complained about (plainly the case here, especially considering Section 230 and its several fatal flaws have been widely featured in the news as of late – the Government knows full well what is at issue in the CC) is the antithesis of lack of clarity tied to true "shotgunning."

### D.    *Conclusion*

There is nothing "decent" about the Communications Decency Act. The law is the problem here; *i.e.*, Section 230 is the harm / injury. When focus is realigned with this reality (again, the reality being that the actual defendant for all intents and purposes is the CDA, not the Government *per se*, and that the associated redress concerns the CDA, not the Government *per se* … but, alas, it is the Government that must stand in as Defendant when the Government's law is at issue),[22] the three check marks associated with the Article III assessment fall into place.

The CDA (namely its unconstitutionality) is what concretely and particularly harmed / injured Fyk. Put differently by way of analogy, when the FCC, SEC, or any other commission harms someone by way of an authoritative law, it is not the commission that is to blame, it is the authority granted that is to blame. The harm Fyk experienced as a result of the CDA's unconstitutionality is traceable to Defendant Government in that (1) it was the Government who

---

[22] *See* n. 3, *supra*.

enacted this law in 1996, (2) it is the Government who has left the CDA intact / unchecked for twenty-six-plus-years, and / or (3) it is the Government who has failed in its CDA enforcement responsibilities (non-existent enforcement on the Government's part), by way of, for example (the most glaring example), the Government's inappropriate delegation (in form and / or function) of authoritative "enforcement" to Big Tech. The Government … and the Government alone … is responsible for the unconstitutional / legally untenable law that is the CDA and / or the wayward "enforcement" of the CDA. And the redress badly needed by Fyk (and badly needed by the rest of the world, for that matter) is this Court's eradication of that bad law – wiping the United States Code clean of the twenty-six-plus-year-old cancer that is Title 47, United States Code, Section 230.

WHEREFORE, Plaintiff, Jason Fyk, respectfully requests that this Court enter an Order (a) denying the Motion to Dismiss in its entirety and compelling Defendant, the United States of America, to answer the CC posthaste,[23] and (b) affording any other relief the Court deems equitable, just, and / or proper.

Dated:  October 21, 2022.                      Respectfully Submitted,

                                               **CALLAGY LAW, P.C.**
                                               P.O. Box 741214
                                               Boynton Beach, Florida  33474
                                               (201) 261-1700 (o); (201) 549-8753 (f)

                                               /s/ *Jeffrey L. Greyber*
                                               **Jeffrey L. Greyber, Esq.**
                                               DDC Bar ID: 1031923
                                               jgreyber@callagylaw.com
                                               hcasebolt@callagylaw.com
                                               *Attorney for Plaintiff*

---

[23] If the Court somehow sides with Defendant on any of its Motion to Dismiss arguments, Fyk respectfully requests an opportunity to amend the Constitutional Challenge [D.E. 2]; *i.e.*, would request that no aspect of any dismissal (in part or in whole) be with prejudice. Indeed, even Motion to Dismiss suggests at the end that a dismissal should be without prejudice with leave to amend.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 21, 2022, I electronically filed the foregoing documents with the Clerk of the Court by using CM / ECF. I also certify that the foregoing document is being served this day on all counsel of record *via* transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ *Jeffrey L. Greyber*
**Jeffrey L. Greyber, Esq.**