UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| JASON FYK, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Civil Action No. 22-1144 (RC) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Defendant*. | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

**INTRODUCTION**

Much like his complaint, Plaintiff's Response to Defendant's Motion to Dismiss consists primarily of his personal views about Section 230 of the Communications Decency Act (CDA). Plaintiff has not directly engaged with any of Defendant's arguments as to why he lacks standing for his lawsuit challenging the constitutionality of Section 230 of the CDA in this lawsuit and why his complaint fails to state a claim for which the Court can grant relief. Notably, Plaintiff does not identify a single component of the U.S. Government that caused him a specific injury-in-fact that would be remedied by a favorable judgment in this lawsuit.

Plaintiff's unhappiness with the outcome of his lawsuit against Facebook and his policy disagreements with Congress' passage of the CDA do not amount to an injury-in-fact that is traceable to the U.S. Government. Moreover, Plaintiff has articulated no theory at all as to how a ruling that Section 230 is unconstitutional would have redressed whatever injuries he believes Facebook caused him. Finally, Plaintiff fails even to address Defendant's arguments that Plaintiff failed to state a constitutional challenge under the First and Fifth Amendments. He has therefore waived his defense to Defendant's Rule 12(b)(6) motion.

Dismissal with prejudice is the appropriate result where, as here, Plaintiff has failed to establish standing and failed to state a claim.  In the instant lawsuit, Plaintiff unsuccessfully attempts to plead a constitutional challenge that he could have brought in his lawsuit against Facebook.  Plaintiff's verbose narratives about Section 230 are insufficient to establish standing in this case and do not articulate a cognizable constitutional claim under the U.S. Constitution.  As such, the Plaintiff has failed to establish standing and has failed to state a claim.

## ARGUMENT

### I.    Plaintiff Has Not Established Standing

Plaintiff has not clarified what gives him standing to bring this lawsuit.  His alleged injury is that his "professional life was reduced to rubble" and "his only business destroyed" when Facebook removed from public view various content that Plaintiff had posted on the site. Plaintiff's Opposition, ECF No. 11 (Pl. Opp.) at 3.  Plaintiff attached an exhibit to his opposition brief that purports to explain his injury-in-fact, but this document does not clarify how Facebook's actions violated Plaintiff's constitutional rights. At most it alleges that Facebook took action that reduced the visibility of what he posted to the site and that this action resulted in unspecified reductions in Plaintiff's advertising income. Pl. Opp. Ex. 2 (ECF No. 11-2) at 3.  He further claims that he lost "hundreds of millions of dollars" because of Facebook's actions. Pl. Opp. at 16.  These are vague and conclusory allegations that do not rise to a cognizable injury-in-fact.  Rather, they are nothing more than unsupported and self-serving statements that Facebook interfered with some unspecified business opportunity that was supposedly worth "hundreds of millions of dollars" to Plaintiff.

Plaintiff's argument on traceability is nonsensical.  Rather than identify a specific action of the government that caused Facebook to remove his posts from that website, Plaintiff generally asserts that the U.S. Government is responsible for "enacting and enforcing" the CDA. Pl. Opp. at 7.  Even if this articulated an injury-in-fact were fairly traceable to the U.S. Government, which it

is not, Plaintiff offers not even a speculative theory as to why he would have prevailed in his lawsuit against Facebook even absent Section 230.  Plaintiff has therefore failed to establish standing to challenge Section 230 of the CDA in this lawsuit.

### A.  Plaintiff's Alleged Injury is not Fairly Traceable to Section 230

Plaintiff's causal theory in this case is that he lost unspecified advertising revenue because "the Government enacted the CDA" and "the Government is tasked with enforcing the CDA." Pl. Opp. at 19.  This assertion does not establish standing to sue the U.S. Government.  First, "the Government" did not enact the CDA.  The CDA was passed by both houses of Congress and then signed into law by the President.  Plaintiff's argument amounts to an allegation that the legislative policymaking process that resulted in the passage and enactment of the CDA was unconstitutional, yet he offers no support whatsoever for such a bold theory.  Plaintiff's disagreement with the policymaking choices that led to the passage and enactment of the CDA do not amount to government actions that caused Facebook to act on Plaintiff's posts decades later.

Second, Plaintiff is incorrect that the Government "enforces" the CDA.  Indeed, Section 230 is not enforced by any component of the U.S. Government.  Instead, that provision grants providers of interactive computer services immunity from civil liability in lawsuits filed by private parties for harms allegedly caused by the provider's decision to restrict use of its service.  Plaintiff fails to even identify the specific "enforcement" action of Section 230 that gives rise to his claims in this lawsuit.  Instead, he claims that "the Government was…solely responsible for the oversight and/or enforcement of Section 230 over the last twenty-six plus years." Pl. Opp. at 7.  He further asserts that "the Government" is responsible for enforcing the CDA in a constitutionally and legally sound fashion, but that "the Government has consistently failed [Plaintiff]…in this regard during the CDA's twenty-six-plus year lifespan."  *Id.*  This generic, conclusory allegation does not articulate with requisite specificity what government action is responsible for any alleged injuries

to Plaintiff.  To the contrary, all that Plaintiff offers is a vague allegation of unspecified government action to apply Section 230 in an unconstitutional manner.  This is wholly insufficient.

Defendant's lack of enforcement authority forecloses Plaintiff's standing to bring this suit, for it is a "long-standing rule that a plaintiff may not sue [an alleged actor] who is without any power to enforce the complained-of statute." *Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) (en banc) (citing *Gritts v. Fisher*, 224 U.S. 640, (1912); *Muskrat v. United States*, 219 U.S. 346, (1911)); *see also Digital Recognition Network, Inc. v. Hutchinson,* 803 F.3d 952, 957–58 (8th Cir. 2015) ("[W]hen a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.") (quoting *Bronson v. Swensen*, 500 F.3d 1099, 1110 (10th Cir. 2007)); *Hope Clinic v. Ryan*, 249 F.3d 603, 606 (7th Cir. 2001) (per curiam) ("Because the public officials named as defendants could not cause the plaintiffs any injury by enforcing the statutes' private-action provisions ... [,] the plaintiffs lack standing with respect to these provisions."); 13A Charles A. Wright & Arthur R. Miller *et al.*, *Federal Practice & Procedure* § 3531.5 (3d ed. 2016).[1]

For similar reasons, it is not "likely" that Plaintiff's "injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560-561 (1992) (internal quotation marks and citation omitted).  Plaintiffs seek a declaratory judgment as to the statute's constitutionality. *See* Compl. Count 1. As the United States Federal Government has no enforcement authority, such

---

[1] Although the cases cited concern suits against state officials, the logic as to Article III standing should apply with equal force to suits against the federal government, and Plaintiff has offered none. Because the United States does not have the authority to enforce § 230, the injury alleged here is not fairly traceable to any action by the United States.  Plaintiff therefore cannot satisfy the causation prong of Article III's standing inquiry.

a declaration could be meaningless.  Plaintiff's argument appears to rest on the entirely speculative implication that Facebook would voluntarily change course and permit Plaintiff's removed content to stand. Indeed, even absent the affirmative defense supplied by § 230, the private social-media company could argue that it cannot be compelled to publish a particular message. *See, e.g., Hurley v. Irish–Am. Gay, Lesbian & Bisexual Group of Boston*, 515 U.S. 557, 573–74 (1995) ("[O]ne important manifestation of the principle of free speech is that one who chooses to speak may also decide what not to say .... [That] rule's benefit [is not] restricted to the press, being enjoyed by business corporations generally ... as well as by professional publishers.") (internal quotation marks and citation omitted); *Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241, 256–58 (1974) (holding unconstitutional a Florida statute requiring newspapers to provide political candidates with free space to reply to attacks on their character); *Mazur v. Szporer*, 2004 WL 1944849, at *8 (D.D.C. 2004) (explaining "that governmental intrusion into the function of newspaper editors in deciding what to publish is a violation of the First Amendment").

Plaintiff's contention that a declaratory judgment against the United States would redress his asserted injury "overlooks the principle that it must be the effect of the court's judgment *on the defendant* that redresses the plaintiff's injury." *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005) (emphasis added). "A declaration that [§ 230] is unconstitutional would not redress [Plaintiff's] injury by virtue of its effect *on the defendant officials*." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 957–58 (8th Cir. 2015) (emphaisis added).  At most, such a declaration might somehow indirectly affect social-media companies' behavior in terms of how they handle Plaintiff's content—but again, that is a wholly speculative proposition. *Id.* at 959 ("Because the defendant officials do not enforce the Act, a declaratory judgment would not meet

the requirement of redressability.") (citing *Bronson v. Swensen*, 500 F.3d 1099, 1112 (10th Cir. 2007)).

Plaintiff also doubles down on his theory that Section 230 made Facebook a government actor by baselessly asserting that Section 230 granted Facebook sovereign immunity. *See* Pl. Mem. at 14 ("Section 230's vague, overly broad 'sovereign' immunization of Big Tech's unlawful conduct results in a deep chilling effect on all lawful/permissible speech online and is an all-out assault on citizens' due process rights.").  Sovereign immunity limits lawsuits against the U.S. Government or State governments.  *See Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996); *Alden v. Maine*, 527 U.S. 706, 712 (1999).  Plaintiff's references to sovereign immunity do not establish that Facebook's actions on his posts were traceable to the U.S. Government.  He has identified no provision of the CDA that purports to extend sovereign immunity to Facebook.

When deciding a motion to dismiss for lack of subject matter jurisdiction, a court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor in favor of the plaintiff, but courts are not required to accept inferences unsupported by the facts or legal conclusions that are cast as factual allegations." *Schmidt v. Capitol Police Bd.*, 826 F. Supp. 2d 59, 65 (D.D.C. 2011) (internal citations omitted).  Plaintiff's traceability arguments rests entirely on unsupported factual and legal conclusions that unspecified actors in the U.S. Government have been unconstitutionally applying Section 230 to Plaintiff and that Section 230 made Facebook a state actor.  This unsupported legal conclusion does not meet Plaintiff's burden to show that he suffered an injury that is traceable to the U.S. Government.

**B.  This Court Cannot Redress Plaintiff's Alleged Injury**

Plaintiff also fails to establish that his alleged injury is likely to be redressed by the requested relief.  Here, Plaintiff requests that the Court redress his alleged injury—the loss of unspecified advertising revenue after Facebook removed some of his content from the site—by

declaring Section 230 to be unconstitutional. Compl. (ECF No.2) at 143. But as Defendant explained, Plaintiff has failed to clearly identify any pecuniary loss that he incurred because of Facebook acting on the content that he posted.  Nor has Plaintiff established that Facebook is a state actor.  Thus, Plaintiff offers no coherent theory as to how the declaratory relief he seeks would redress whatever injury he contends Facebook caused him.  Moreover, Section 230 is not the only legal means for Facebook or another social media company to potentially take action regarding Plaintiffs' accounts in the future.

Plaintiff's Opposition largely ignores this fundamental redressability problem. Plaintiff's only response to Defendant's lack of redressability argument is to assert that "it simply cannot be reality" that his constitutional challenge cannot be brought in this Court, which he sees as "the jurisdiction of the Government and the highest court in the land." Pl. Mem. at 22.  But that assertion does not explain how declaring Section 230 as unconstitutional would prevent Facebook from identifying another alternative legal basis for acting on the content he posts to the site, nor has he shown how his asserted economic injuries could be redressed through this action.  Thus, Plaintiff fails to establish redressability and this Court lacks subject matter jurisdiction.

**C.  Plaintiff's First Amendment Claim Is Not Exempt From The Standing Requirement**

Plaintiff argues that there is an exception to the requirement to prove standing for claims alleging violations of the First Amendment. Pl. Opp. at 23-24.  He cites *County Court of Ulster County, N.Y. v. Allen*, 442 U.S. 140 (1979), in support of this proposition.  Pl. Opp. at 23-24. Plaintiff misunderstands *Allen*, which discussed third party standing but did not involve a facial challenge to a statute under the First Amendment. *Id.* at 154-56. In any case, Plaintiff is incorrect that there is an exception to the standing requirement for First Amendment claims.  In *Broadrick v. Oklahoma,* 413, U.S. 601 (1973), the Supreme Court held that that the "traditional rules of

standing" may be relaxed when a plaintiff brings a facial overbreadth challenge to a statue. *Id.* at 611-12.  The Court reasoned that the need to ensure that litigants have a strong personal stake in the outcome of the case is diminished when the existence of an overbroad statute may chill protected speech. *Id.* It is not the case that simply raising an overbreadth claim excuses a plaintiff from the constitutional standing requirements. *See Nat'l. Assoc. for the Advancement of MultiJurisdiction Prac. v. Roberts*, 180 F. Supp. 3d 46, 56 (D.D.C. 2015) (finding that two plaintiffs who did not plead "concrete, actual, or imminent injuries in fact" could not establish standing by raising an overbreadth claim under the First Amendment.).

In any event, Plaintiff has not established standing to bring a facial overbreadth claim because Plaintiff's complaint does not clearly allege how Section 230 has had a chilling effect on protected speech.  In support of his inaccurate contention that his overbreadth claim excuses him from establishing standing, Plaintiff's opposition brief simply cites to 16 pages of his complaint that contain a rambling laundry list of disagreements with how social media companies moderate content on their platforms. Pl. Opp. at 23.  Claims of facial overbreadth and vagueness are rarely entertained when the contested statute regulates conduct in a "neutral non-censorial manner." *Broadrick,* at 614. As Defendant has stated, Section 230 does not actually regulate speech, and Plaintiff's overbreadth claim does not identify how Section 230 targets particular speech.  Rather, Plaintiff simply lists his disagreements with how social media companies operate their platforms. Accordingly, Plaintiff's overbreadth claim does not excuse him from the constitutional requirement to establish standing to sue.

## II.    Plaintiff Fails to Identify Any State Action that Could Implicate the First or Fifth Amendments.

Plaintiff decided not to offer an argument opposing Defendant's motion to dismiss this case under Rule 12(b)(6). Pl. Opp. at 19, n.1.  Instead, Plaintiff inaccurately asserts that the state action

requirement for a claim brought under the First or Fifth amendments is identical to the traceability prong of Article III standing and so what purports to be his argument on traceability also responds to Defendant's Rule 12(b)(6) motion. *Id.* That is incorrect. While both traceability and the state action requirements for claims under the First or Fifth amendments pertain to Plaintiff's allegations (or lack thereof) of Government action that deprived him of his constitutional rights, a Rule 12(b)(1) motion involves a different inquiry than a Rule 12(b)(6) motion. Unlike motions to dismiss under Rule 12(b)(1), under Rule 12(b)(6) the Court may only consider the facts alleged in the complaint and any exhibits attached thereto, and any matters subject to judicial notice. *Smith v. United States*, 518 F. Supp. 2d 139, 145 (D.D.C. 2007). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. at 570 (1955). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570). Even if Plaintiff articulated how his alleged injury was traceable to a component of the U.S. Government, it does not necessarily follow that he has pled facts that, if true, show a violation of his First and Fifth amendment rights by a state actor, because the state action might not involve a deprivation of such rights. Moreover, Plaintiff argued that he was not even required to establish constitutional standing for his First Amendment claim. Because Plaintiff failed to address Defendant's Rule 12(b)(6) motion, the court should treat that issue as conceded. *Klayman v. Obama,* 125 F.Supp.3d 67, 87 (D.D.C. 2015) ("In this Circuit, when opposition papers fail to address certain arguments raised by the moving party, the court may treat those arguments as conceded.").

As argued in Defendant's opening brief, Plaintiff's complaint fails to identify any state action that deprived him of his First or Fifth Amendment rights.  Plaintiff's opposition brief simply ignores the requirement to identify a state action when bringing a claim alleging a violation of the First Amendment.  As for the Fifth Amendment, plaintiff alleges that his Due Process rights were violated by the "California courts" and the U.S. Supreme Court, but he does not explain what these violations were. Pl. Opp. at 14-15. Rather, the alleged violation of the Fifth Amendment appears to be that other courts did not rule in his favor.  That is not a due process violation.  Rather, it is simply the courts disagreeing with his strongly held opinions about Section 230.  Plaintiff's unhappiness with the outcome of his lawsuit against Facebook and his legal theories about Section 230 are insufficient to state a claim for relief based on alleged violations of the First and Fifth amendments.  Disagreement with a court's ruling is a reason to appeal, not a reason to bring a new lawsuit arguing that the first court acted unconstitutionally. *Munoz v. Bd. of Trustees of Univ. of D.C.*, 730 F. Supp. 2d 62, 67 (D.D.C. 2010) ("the appropriate place to challenge alleged errors of law is by filing an appeal").  In sum, this case should be dismissed.

## III.    Plaintiff's Complaint Does Not Comply With Rule 8

If Plaintiff's complaint is not dismissed under Rule 12(b)(1) or Rule 12(b)(6), it should be dismissed without prejudice for failure to comply with Rule 8.  Plaintiff's opposition does not explain why his 143 page complaint and approximately 450 pages of exhibits attached thereto complies with Rule 8.  Instead, he launches back into his legal arguments about the constitutionality of Section 230.  Plaintiff also ignores the authority Defendant presents in its opening brief that a complaint can run afoul of Rule 8 for being too long. *See* Def. Mot. at 14-15. Plaintiff's complaint consists mostly of lengthy discussions of Plaintiff's ideas about constitutional theories and how he thinks they apply to Section 230.  He does not clearly state what injury he suffered, who did it, and why this lawsuit would redress those alleged injuries.  He fails to clearly

identify any government action that gives rise to his claims under the First and Fifth amendments. Rule 12(f) "is designed to reinforce the requirement in Rule 8(e) that the pleadings be simple, concise, and direct." *In re Merrill Lynch & Co., Inc. Research Reports Sec. Lit.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1380 (2d ed. 1990)). Thus, if this Court does not otherwise dismiss Plaintiff's complaint, the Court should dismissed for failure to concisely set forth Plaintiff's claims.

## **CONCLUSION**

For all the reasons stated herein, as well as in Defendant's Motion to Dismiss, Defendant respectfully requests that this matter be dismissed.


Date: November 21, 2022                    Respectfully submitted,

                                           MATTHEW M. GRAVES, D.C. Bar #481052
                                           United States Attorney

                                           BRIAN P. HUDAK,
                                           Chief, Civil Division

                              By:     /s/
                                      BENTON PETERSON
                                      Assistant United States Attorney
                                      601 D St., N.W.
                                      Washington, D.C.  20530
                                      (202) 252-2534