UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| JASON FYK, | : | | |
| | : | | |
| *Plaintiff*, | : | | |
| | : | | |
| v. | : | Civil Action No.: | 22-01144 (RC) |
| | : | | |
| UNITED STATES OF AMERICA, | : | Re Document No.: | 9 |
| | : | | |
| *Defendant*. | : | | |

## MEMORANDUM OPINION

### GRANTING DEFENDANT'S MOTION TO DISMISS

### I. INTRODUCTION

Plaintiff Jason Fyk asserts that Facebook[1] improperly restricted and removed his Pages from the social network. And so he brings a claim against the United States of America, seeking a declaratory judgment that Section 230 of the Communications Decency Act of 1996 ("CDA") violates the U.S. Constitution. *See* Compl., ECF No. 2. The Government, as Defendant, moves to dismiss for lack for subject-matter jurisdiction and failure to state a claim, and in the alternative, moves to strike the complaint as overly lengthy. *See* Def's Mot. to Dismiss ("Def's Mot."), ECF No. 9. Because Mr. Fyk lacks standing, the Government's motion to dismiss for lack of subject-matter jurisdiction is granted.

---

[1] Facebook's operating company is now known as "Meta Platforms, Inc." To reflect the terminology used in the Complaint, this opinion refers to both the social network and its legal identity as "Facebook."

## II.  BACKGROUND

This case arises from Mr. Fyk's interactions with the social media network Facebook, and it is not the first time that Plaintiff has taken his conflict with Facebook into the court system.  The Complaint is circuitous and often omits critical details, but the following represents the Court's best attempt to summarize the factual allegations, which are largely found in the Complaint's Exhibit B.[2]  Mr. Fyk was the owner and operator of WTF — Where's The Fun — Magazine ("WTF Magazine"), an online business that shared "humorous content" to receive user engagement.  Compl., Ex. B. ¶ 2, ECF No. 2-2.  It appears that WTF Magazine primarily operated through Pages on the Facebook platform.[3]  *Id.*  At peak, Mr. Fyk had more than 25,000,000 followers across his more than six Pages affiliated with WTF Magazine and was generating "hundreds of thousands of dollars a month" in revenue from advertising and lead generating activities.  *Id.*; *see also* Compl. ¶ 203.

In the years between 2010 and 2016, Facebook implemented an optional program where Page operators could pay for greater promotion of their content to users.  Compl. Ex. B. ¶ 3.  At some point thereafter, a "high-ranking Facebook executive bluntly told Fyk that Fyk's business was disfavored compared to other businesses" that paid to promote their Pages.  *Id.* ¶ 4.  Mr. Fyk then reluctantly opted into Facebook's paid promotion program "at a relatively low amount of money" compared to an unnamed competitor business.  *Id.*  Nonetheless, on an unstated date,

---

[2] Because the Court is resolving a motion to dismiss, it recounts the facts as pled in the Complaint and assumes them to be true.  *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

[3] While Facebook mostly functions through interactions between personal user accounts, users can also create and interact with Facebook "Pages."  These Pages "are for businesses, brands, organizations and public figures to share their stories and connect with people."  People who like or follow a Page can receive updates from that Page in their Feed.  Facebook, *Create A Facebook Page*, https://www.facebook.com/help/104002523024878 (last visited June 7, 2023).

Facebook "reduced the reach" of Mr. Fyk's Pages "by over 99% overnight." *Id.* After that, in October 2016, Facebook removed several of Mr. Fyk's Pages, totaling over 14,000,000 followers, under the guise of "content policing."[4] *Id.* Mr. Fyk alleges that Facebook's content moderation justification was mere pretense, and that Facebook actually removed the Pages to favor a competitor that paid more for promotion. *Id.* ¶¶ 4–5. Mr. Fyk only briefly describes the content that Facebook removed. For example, "in or around the end of 2016," Facebook deleted one of Mr. Fyk's Pages that had posted a screenshot of a character from Disney's "Pocahontas" movie, claiming the screenshot was racist. Compl. ¶ 252. Facebook also removed a photo of a child altered to have the head of a fictional character from the movie "The Goonies." *Id.* ¶ 253.

In February and March of 2017, Mr. Fyk reached out to a prior business colleague and now competitor "who was favored by Facebook" for paying more in advertising and who had a dedicated Facebook representative. Compl. Ex. B. ¶ 5. It is unclear if this was the same "competitor" referenced previously. Mr. Fyk asked the competitor to request that Facebook restore his Pages. *Id.* When the competitor did so, Facebook declined the request unless the competitor took ownership of Mr. Fyk's Pages. *Id.* Thereafter, Mr. Fyk sold WTF Magazine and corresponding Pages to the competitor for an unknown sum. *Id.* Facebook then restored the Pages and the same content it had previously removed. *Id.* Mr. Fyk claims that because of these events, his "professional life was reduced to rubble" and "his online business destroyed" causing him to lose "hundreds of millions of dollars." Pl.'s Opp'n to Mot. Dismiss ("Pl.'s Opp'n") at 3, 16, ECF No. 11.

---

[4] Facebook relies on its users to post and create content, but posts must follow Facebook's community standards that prohibit offensive, illegal, or otherwise harmful content. *See* Facebook, *Facebook Community Standards*, https://transparency.fb.com/policies/community-standards/ (last visited June 7, 2023).

In 2018, Mr. Fyk took his dispute with Facebook to the courts. Compl. Ex. B. ¶ 6; *Fyk v. Facebook, Inc.*, No. C 18-05159, 2019 WL 11288576, at *1 (N.D. Cal. June 18, 2019), *aff'd*, 808 F. App'x 597 (9th Cir. 2020). Mr. Fyk sued Facebook in the Northern District of California, alleging "fraud, unfair competition, extortion, and tortious interference with his economic advantage based on Facebook's anti-competitive animus." Compl. Ex. B. ¶ 6. Facebook moved to dismiss the claims. *Id.* The U.S. District Court agreed with Facebook, dismissing the lawsuit and holding that Section 230(c)(1) of the CDA immunized Facebook from liability. *Fyk*, 2019 WL 11288576, at *3. Mr. Fyk appealed to the Ninth Circuit, which affirmed the District Court's decision. *Fyk v. Facebook, Inc.*, 808 F. App'x at 598. Undeterred, Mr. Fyk filed a petition for hearing en banc, which was denied. Compl. Ex. B. ¶ 7. In 2020, Mr. Fyk sought review at the Supreme Court. Again, Mr. Fyk's attempt was denied. *Fyk v. Facebook, Inc.*, 141 S. Ct. 1067 (2021) (*cert. denied*). The following year, Mr. Fyk unsuccessfully moved to vacate the District Court's judgment. *Fyk v. Facebook, Inc.*, No. 18-cv-05159, 2021 WL 5764249, at *1 (N.D. Cal. Nov. 1, 2021) (denying motion to vacate), *aff'd*, No. 21-16997, 2022 WL 10964766 (9th Cir. Oct. 19, 2022), *cert. denied*, No. 22-753, 2023 WL 2959399 (U.S. Apr. 17, 2023).

Now, after these previous unfruitful efforts against Facebook, Mr. Fyk brings this suit against the United States, alleging that Section 230 of the CDA violates the First and Fifth Amendments, as well as other legal tenets. Compl. ¶¶ 332–342. The Government seeks to dismiss the Complaint on the grounds that the Plaintiff lacks subject-matter jurisdiction and has failed to state a claim. Def.'s Mot. at 1.

### III.  LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(1), the plaintiff has the burden of proving that the Court has subject-matter jurisdiction to hear his claims. *See Lujan v. Defenders*

4

*of Wildlife*, 504 U.S. 555, 561 (1992).  A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." *Grand Lodge of the Fraternal Ord. of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001).  For this reason, "the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion than in resolving a 12(b)(6) motion for failure to state a claim." *Id.* at 13–14 (quotations removed).  Additionally, under Rule 12(b)(1), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

     Rule 12(b)(6) provides for the dismissal of an action where a complaint fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)).  The Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow*, 216 F.3d at 1113 (citations and internal quotation marks omitted).  A claim is plausible if "it contains factual allegations that, if proved, would allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hurd v. District of Columbia*, 864 F.3d 671, 678 (D.C. Cir. 2017) (quotation omitted).  The Court need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quotation omitted).

     When "faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because [o]nce a court determines that it lacks

subject-matter jurisdiction, it can proceed no further." *Ctr. for Biological Diversity v. Jackson*, 815 F. Supp. 2d 85, 90 (D.D.C. 2011) (citations and internal quotation marks omitted).

### IV.  ANALYSIS

Mr. Fyk advances an array of arguments that Section 230 of the CDA is unconstitutional. However, before the Court can hear the merits of these claims, Mr. Fyk must show that he has a "case" or "controversy" within the parameters of Article III.  *See Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 408 (2013).  One element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue.  *Id.*  Such standing to sue is a necessary "predicate to any exercise of [the Court's] jurisdiction." *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996).

To establish the "[t]he 'irreducible constitutional minimum'" of standing, "(i) the party must have suffered a concrete and particularized injury in fact, (ii) that was caused by or is fairly traceable to the actions of the defendant, and (iii) is capable of resolution and likely to be redressed by judicial decision." *Sierra Club v. EPA*, 755 F.3d 968, 973 (D.C. Cir. 2014) (quoting *Lujan*, 504 U.S. at 560–61).  If a plaintiff fails any of these three prongs, the Court has no jurisdiction to hear the case and must dismiss under Rule 12(b)(1).  *Int'l Acad. of Oral Med. & Toxicology v. FDA*, 195 F. Supp. 3d 243, 253 (D.D.C. 2016) (quoting *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000)) ("[A] deficiency on any one of the three prongs suffices to defeat standing.").

Mr. Fyk is not the first plaintiff in this district who ran into conflict with a social media network and then sued a governmental party claiming that Section 230 is unconstitutional.  *See Am. Freedom Def. Initiative v. Lynch*, 217 F. Supp. 3d 100, 101 (D.D.C. 2016*), aff'd sub nom. Am. Freedom Def. Initiative v. Sessions*, 697 F. App'x 7 (D.C. Cir. 2017).  Indeed, *Am. Freedom*

*Def. Initiative* involved a virtually identical claim, and the Court's decision there provides the blueprint for resolving this case.  In that litigation, the plaintiffs were aggrieved that Facebook, YouTube, and Twitter had removed their content.  *Id*. at 101.  Instead of suing Facebook, YouTube, or Twitter, they sued Attorney General Loretta Lynch in her official capacity, seeking a "declaration that § 230 violates the First Amendment and a preliminary and permanent injunction prohibiting the Attorney General from enforcing the provision." *Id.* at 103.  The Court found that the plaintiffs thoroughly lacked standing to bring the claim and granted a motion to dismiss.  *Id. at 106.*  This Court does the same.

Here, as in *Am. Freedom Def. Initiative,* Mr. Fyk is entirely deficient on at least two of the standing prongs, traceability and redressability.  Rather than piecing together the nature of Mr. Fyk's injury from the scattered allegations about how Facebook's conduct made him suffer economic losses, "[t]he Court assumes without deciding that Plaintiffs have thus plausibly alleged an injury in fact." *Id.* at 104 (assuming that a claimed economic injury from content removal was an injury in fact).  But for standing, "it does not suffice if the injury complained of is the result of the *independent* action of some third party not before the court." *Bennett v. Spear*, 520 U.S. 154, 169 (1997) (emphasis in original) (quotations and alterations removed).  Instead, an injury must be "fairly traceable to challenged conduct of the defendant." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Mr. Fyk's alleged injury has no connection whatsoever to any conduct by the United States, the only defendant in this lawsuit.  It stems entirely from Facebook's independent action to restrict and remove his Pages.

Mr. Fyk argues there is traceability here because "the Government … and the Government alone … is responsible for the unconstitutional / legally untenable law that is the

CDA and / or the wayward 'enforcement' of the CDA."[5] Pl.'s Opp'n at 29. He also asserts that Section 230 of the CDA is a "delegation of regulatory authority." *Id.* at 17. In reality, "§ 230 affords Defendant *no* role—enforcement or otherwise—of any kind, nor does it delegate any enforcement role to *any* federal agency or federal official." *Am. Freedom Def. Initiative*, 217 F. Supp. 3d at 105 (emphasis in original). Instead, Section 230 provides "interactive online services," including Facebook, with immunity from civil liability based on their decision to publish, or not publish, material from users. *See Marshall's Locksmith Serv. Inc. v. Google, LLC,* 925 F.3d 1263, 1267 (D.C. Cir. 2019) ("As courts uniformly recognize, § 230 immunizes internet services for third-party content that they publish, including false statements, against causes of action of all kinds."); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357–59 (D.C. Cir. 2014) (holding that Section 230 immunizes Facebook from liability as the "publisher or speaker" of information). "In sum, the CDA 'allows [computer service providers] to establish standards of decency without risking liability for doing so.'" *Bennett v. Google, LLC*, 882 F.3d 1163, 1168 (D.C. Cir. 2018) (quoting *Green v. Am. Online, Inc*., 318 F.3d 465, 472 (3d Cir. 2003)).

---

[5] Mr. Fyk also argues that he "does not need *per se* Article III standing (i.e., a direct "stake) [sic] in order to challenge the CDA (at least not on First Amendment grounds)." Pl.'s Opp'n at 24. While standing requirements are relaxed in First Amendment overbreadth challenges, "[u]nder no circumstances, however, does the overbreadth doctrine relieve a plaintiff of its burden to show constitutional standing." *Nat'l. Ass'n for the Advancement of Multijurisdiction Prac. v. Roberts*, 180 F. Supp. 3d 46, 56 (D.D.C. 2015) (quoting *Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 799 (8th Cir. 2006); *see also Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956–57 (1984) (finding that while an overbreadth claim under the First Amendment would "justify a lessening of prudential limitations on standing," a plaintiff must nonetheless satisfy Article III standing requirements). In other words, Mr. Fyk must show standing here, and he does not. *See Nat'l. Ass'n for the Advancement of Multijurisdiction Prac.* 180 F. Supp. 3d at 55–56 (finding that plaintiffs who did not plead "concrete, actual, or imminent injuries in fact" could not fix their standing deficiency by raising an overbreadth claim under the First Amendment).

Thus, Mr. Fyk's lawsuit does not accurately describe Section 230, which is a civil liability shield for private parties and does not enable, command, or delegate any state action. *See* 47 U.S.C. § 230(e)(3) ("No cause of action may be brought and no liability may be imposed under any State or local law that is inconsistent with this section."). That the CDA is a federal law does not mean Mr. Fyk can bring a claim against the United States government; preventing such a flood of lawsuits is at the core of standing doctrine. Further, Mr. Fyk is incorrect that "if this action . . . is not the one in which the unconstitutionality / legal untenableness of the CDA can be addressed and redressed, then there is simply no action / courtroom in which the broken CDA can be addressed / redressed." *See* Pl.'s Opp'n at 22. Mr. Fyk had his opportunity to challenge the CDA when Facebook invoked it as a shield against his claims. *See supra* at 3 n.6 (discussing Fyk's litigation in California federal court); *Fyk*, 2019 WL 11288576, at *3, *aff'd*, 808 F. App'x at 597 ("Because the CDA bars all claims that seek to hold an interactive computer service liable as a publisher of third party content, the Court finds that the CDA precludes Plaintiff's claims."). In fact, Mr. Fyk has already pursued the exact avenue envisioned by the Court in *Am. Freedom Defense Initiative*. 217 F. Supp. 3d at 107 ("If Plaintiffs remain unhappy with the companies' content decisions, they can sue *them* and attempt to defeat any § 230 defense that is raised—*e.g.*, by invoking the same constitutional arguments offered here.").

Much for the same reasons that Mr. Fyk fails on the traceability requirement of standing — the Government plays no part in enforcing Section 230 or in Facebook's content moderation decisions — "[t]he requested declaratory relief suffers from similar redressability defects." *See id.* at 106. Mr. Fyk seeks a declaratory judgment that Section 230 is "unconstitutional" and otherwise "legally untenable." Compl. ¶¶ 334–342; Pl.'s Opp'n at 2 n.5 (noting that Mr. Fyk's claim "sounds in declaratory relief"). In this part of the standing inquiry, "it must be the effect of

the court's judgment on the defendant that redresses the plaintiff's injury." *Am. Freedom Defense Initiative*, 217 F. Supp. 3d at 106 (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1159 (10th Cir. 2005)). If Mr. Fyk received his requested relief against the United States, what would change? The United States, which does not enforce Section 230, would continue not to enforce Section 230. Mr. Fyk would not be compensated for his apparent monetary losses. And Facebook would still be able to moderate content, including content posted by Mr. Fyk.[6] *See id.* (observing that declaring Section 230 unconstitutional would not "restore Plaintiffs' removed content or legally prevent the social-media platforms from deleting or otherwise editing Plaintiffs' content in the future"). Because Mr. Fyk seeks a declaratory judgment that would have no effect, he has not presented an injury that could be "redressed by a favorable decision." *See Lujan*, 504 U.S. at 561 (internal quotation marks and citation omitted).

Mr. Fyk eventually admits "the reality being that the actual defendant for all intents and purposes is the CDA." Pl.'s Opp'n at 28. That is the problem. Mr. Fyk recognizes he cannot sue the CDA, but neither can he sue the United States in its place. In the absence of an injury traceable to government action and redressable by a favorable decision, Mr. Fyk has no standing to bring his views on the CDA into this Court. *See Am. Freedom Defense Initiative*, 217 F. Supp. 3d at 104. Article III of the Constitution limits the judicial power "to the traditional role of Anglo-American courts, which is to redress or prevent actual or imminently threatened injury to persons caused by private or official violation of law. Except when necessary in the execution of

---

[6] Perhaps Mr. Fyk envisions that Facebook would alter its approach to moderation if it knew it could not invoke Section 230 immunity, but Mr. Fyk presents no allegations showing Facebook would have treated his Pages differently in the absence of Section 230. "At most, such a declaration [that Section 230 is unconstitutional] might somehow indirectly affect the behavior of the social-media companies as to Plaintiffs' content—but that, again, is a wholly speculative proposition." *Am. Freedom Defense Initiative*, 217 F. Supp. 3d at 106.

that function, courts have no charter to review and revise legislative and executive action." *Summers v. Earth Island Inst.*, 555 U.S. 488, 492 (2009); *see also Carney v. Adams,* 141 S. Ct. 493, 499 (2020) (quoting *United States v. Richardson,* 418 U.S. 166, 188 (1974) (Powell, J., concurring) ("[W]e should be ever mindful of the contradictions that would arise if a democracy were to permit general oversight of the elected branches of government by a nonrepresentative, and in large measure insulated, judicial branch.")).

Finally, "the appropriate place to challenge alleged errors of law is by filing an appeal." *Muñoz v. Bd. of Trs. of Univ. of D.C.*, 730 F. Supp. 2d 62, 67 (D.D.C. 2010). In essence, this litigation attempts to circumvent Mr. Fyk's repeatedly unsuccessful efforts to bring claims against Facebook in California. Mr. Fyk cannot reframe his conflict with Facebook into a claim against the United States to get yet another chance at pressing his disdain for Section 230. Mr. Fyk has no standing to sue the United States, and his claim must be dismissed for lack of subject-matter jurisdiction. Because the Court has no jurisdiction in this case, it will not resolve the Government's motion to dismiss for failure to state a claim, nor the alternative motion to strike the complaint.[7]

---

[7] It warrants remarking that the Government's Rule 12(b)(6) argument would likely succeed. Mr. Fyk's injury is not connected to the United States; Plaintiff's constitutional rights are not implicated by Facebook's content moderation activities. Plaintiff also declined to respond to the Government's Rule 12(b)(6) argument, inaccurately arguing the analysis was the same as under 12(b)(1), and thus raising the prospect that Plaintiff forfeited his opposition. *See* Reply Supp. Def.'s Mot. Dismiss at 8–9, ECF No. 13; *Klayman v. Obama*, 125 F. Supp. 3d 67, 87 (D.D.C. 2015) ("In this Circuit, when opposition papers fail to address certain arguments raised by the moving party, the court may treat those arguments as conceded."). Lastly, regarding the motion to strike, the Court observes that the meandering and lengthy Complaint was unhelpful in elucidating the nature of the claim.

## V.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 9) is **GRANTED**.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  June 9, 2023                                                                  RUDOLPH CONTRERAS
                                                                                              United States District Judge